In re James Fritz BUTLER d/b/a B & F Dozer Work and a/k/a Fritz Butler, Linda Lou Butler, Debtors.

C. Kenneth STILL, Trustee, Plaintiff,

v.

MURFREESBORO PRODUCTION CREDIT ASSOCIATION, Defendant.

Bankruptcy Nos. 1–79–01682, 1–80–0008.

United States Bankruptcy Court, E. D. Tennessee.

March 5, 1980.

William M. Foster, Chattanooga, Tenn., for plaintiff.

George C. Eblen, Shelbyville, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This cause came on to be heard upon the complaint of C. Kenneth Still, Trustee, seeking to sell a John Deere Dozer, Model JD 550, free and clear of any claimed lien of defendant, Murfreesboro Production Credit Association.

It is the contention of the defendant that it has a perfected security interest in the dozer and that the trustee should be ordered to disclaim it.

It is essentially undisputed that debtor gave the defendant a security interest in the dozer.

The defendant recorded its financing statement twice:

(1) first, on March 17, 1978, in the office of the register, Franklin County, Tennessee, and

(2) second, on November 1, 1979, in the office of the secretary of state.

Debtor filed his bankruptcy petition on November 19, 1979.

The trustee contends that the first filing did not perfect the security interest and that the second filing, though it perfected the security interest, was a preferential transfer voidable under Bankruptcy Code § 547(b), 11 U.S.C. § 547 (1978). The trustee must be right on both points in order to avoid the security interest.

█ The first question is whether the filing in the county perfected the defendant's security interest. The perfection of a security interest is governed by Article 9 of the Uniform Commercial Code, Tennessee Code Annotated 47-9-101, et seq.

Section 47-9-302 of the Code provides that a financing statement ". . . must be filed to perfect all security interests . . ." with certain exceptions. The exceptions are not relevant to this proceeding.

Section 47-9-401(1)(a) of the Code further provides that the place to file in order to perfect a security interest in "equipment used in farming operations" is in the office of the register in the county of the debtor's residence.

Section 47-9-401(1)(c) of the Code further provides that in all other classifications (with exceptions not relevant here), the place to file in order to perfect a security interest is in the office of the secretary of state.

Section 47-9-109 of the Code, classifies goods as:

(1) "consumer goods"
(2) "equipment"
(3) "farm products"
(4) "inventory"

It is undisputed that the dozer is classified as equipment. The question is whether it was bought for or used primarily in "business" or "farming operations".

In summary, the code provides:

(a) if the equipment is used primarily in "business", a security interest is perfected by filing in the office of the secretary of state.

(b) if the equipment is used primarily in "farming operations" a security interest is perfected by filing in the office of the register.

The comments to official text are helpful:

4. Goods are "farm products" only if they are in the possession of a debtor engaged in farming operations. Animals in a herd of livestock are covered whether they are acquired by purchase or result from natural increase. Products of crops or livestock remain farm products so long as they are in the possession of a debtor engaged in farming operations and have not been subjected to a manufacturing process. The terms "crops", "livestock" and "farming operations" are not defined; however, it is obvious from the text that "farming operations" includes raising livestock as well as crops; similarly, since eggs are products of livestock, livestock includes fowl.

The debtor purchased the equipment from Tractor Service Company, Inc. of Manchester, Tennessee. The purchase was written on a form entitled "Purchase Order—For John Deere Industrial Equipment." There is a box with the following heading: "Indicate End-Use of Equipment." The seller checked the box labeled "Excavating Contractor."

It is undisputed that debtor was an excavating contractor. His customers were the general public, including farmers. It is estimated that half of his jobs may have involved excavating and clearing for farmers. The debtor at the time of purchase did not own a farm and was not a farmer.

The debtor was not engaged in raising livestock. The debtor was not engaged in raising poultry. The debtor had no crops. The debtor was not a farmer. The debtor was *not* engaged in farming operations.

The debtor was an excavating contractor. The equipment was used in his business. The fact that on occasion the debtor contracted with a farmer does not change the business of an excavating contractor into a farming operation.

It seems settled that the purpose for which goods are bought and used determines the category in which goods should

be placed. In the present proceeding the dozer was bought for and used in the business of an excavating contractor.

As noted in a recent law review article:

In determining the category into which goods should be placed, the test is: what function does the collateral serve in relation to the debtor in question? that is, for what purpose is it used? or for what purpose is it bought? rather than for what function might it be adapted?

Welsh, *Judicial Interpretations of the Filing Requirements Under Article Nine Of the Code*, 37 Tenn.L.Rev. 273, 278 (1970).

A majority of courts in determining whether equipment is used in farming operations look at the use for which equipment was purchased or the use actually made of the equipment. The *actual* use test seems the proper criterion for determining whether equipment is "used in farming operations". See: 30 A.L.R.3d, at pp. 66–67.

Cases interpreting § 9–401 of the Uniform Commercial Code include:

*In re Leiby* 1 U.C.C.Rep.Serv. 428 (Bankr. Ct., E.D.Pa.1972). In this case the court held that tractors were equipment used in business. The debtor, like the one in the present proceeding, was an excavation contractor. The court, at page 430, comments:

The Code phrases "used or bought for use in business" (including farming) and "equipment used in farming operations," suggest that the test to be employed is in a sense subjective and empirical; that the use for which the equipment was purchased, or the use actually made of the equipment is the criterion to be employed when determining what steps are necessary by the secured party to perfect a security interest   .   .   .

.   .   . In the light of the undisputed facts about Leiby's business and his use of this equipment, it is not possible to view these tractors as having been used in farming operations.

*Mountain Credit v. Michiana Lumber & Supply, Inc.,* 498 P.2d 967, 10 U.C.C.Rep. Serv. 1347 (Colo.App.1972). The court held that a log loader was equipment used in business.

The court 498 P.2d at page 969, 10 U.C.C. Rep.Serv. at page 1349 said:

Defendants argue that timber is an issue of the soil and should be considered a farm product. As such, defendants would have us hold that the logging of timber is a farming operation and a log-loader used exclusively for harvesting timber is "equipment used in farming operations," making filing with the county clerk and recorder the proper procedure. Farming in the traditional sense, however, pertains to preparation of soil, planting of seeds, caring for crops, and harvesting the yield at the end of the process. One can be a farmer of trees if they are grown from seed and cared for in a nursery setting, but the commercial logging of trees by a firm such as Loggers, Inc., is not farming.

*In re La Rose,* 7 U.C.C.Rep.Serv. 964 (Bankr.Ct., D.Conn.1970). The court held that a tractor and loader were business equipment. The debtor was not a farmer. He was a laborer who used the tractor to supplement his income by hauling logs and to help plow his father's garden.

The court at page 965 comments:

The tractor and loader could be used for many purposes, including adaptation for farm work such as plowing, harrowing, etc. Hauling logs might be incidental to the operation of a farm but as the bankrupt described his use it was more in the nature of transportation than farming.

*Sequoia Machinery, Inc. v. Jarrett,* 410 F.2d 1116 (9th Cir. 1969). The court held that harvesting combines were "equipment used in farming operations," even though purchaser was not farmer but "custom harvester"; therefore, trustee in bankruptcy was entitled to prevail over combine seller who had failed to record security interest in office of county recorder, despite fact that good-faith filing had been made by seller in office of secretary of state, in absence of proof that trustee in bankruptcy or perhaps all of unsecured creditors had actual knowledge of contents of financing statement.

In the Sequoia case the debtor owned commercial harvesting equipment and contracting with farmers to do custom harvesting. The debtor was mobile and could move his equipment from one jurisdiction to another. Comments to Section 47-9-103(2) indicate the desirability of central filing with respect to equipment which is normally used in more than one jurisdiction. Local filing was intended for a farm operation in one locality. Central filing is more desirable for a commercial harvesting operation. It is not essentially local in nature. The operation is mobile and goes from one jurisdiction to another. A rational filing system should require central filing for a commercial harvesting operation. That is where a creditor would look for information on a debtor who operates equipment in various jurisdictions.

In the present proceeding the dozer was bought and used in the business of an excavating contractor. He operated in various jurisdictions. It was necessary for defendant to file in the office of the secretary of state to perfect its security interest.

█ It is the trustee's contention that defendant's perfection of its security interest just eighteen days before the filing of the bankruptcy case constitutes a preferential transfer and is voidable under Bankruptcy Code § 547(b), 11 U.S.C. § 547 (1978).

Section 547 of the Code allows the trustee to recover transfers, either securing or paying antecedent debt, within a prescribed period of time before the bankruptcy case. It replaces the complex provisions of Sections 60a, b, and c of the Bankruptcy Act.

The six elements of a preference under 11 U.S.C. § 547b are:

(1) a transfer of property of the debtor;

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt;

(4) made while the debtor was insolvent;

(5) made within 90 days before the date of the filing of a petition; and

(6) that enables the creditor to receive more than he would have received if the transfer had not been made and

the case were a liquidation case under chapter 7.

There was a requirement of section 60b of the Act that the creditor receiving the preference have reasonable cause to believe that the debtor was insolvent.

Congress in its wisdom has chosen to eliminate the reasonable-cause-to-believe test from the ordinary preference situation. The goal of equality of distribution among creditors becomes paramount. Whether or not a preferred creditor had knowledge of the debtor's insolvency, with one exception which is not relevant in this proceeding, will no longer be relevant in a proceeding to avoid a preference.

Congress has simplified the trustee's burden in preference actions in another way. Section 547(f) grants the trustee a presumption of insolvency during the 90 days before bankruptcy. Under Section 60 of the Bankruptcy Act, proof of insolvency was always difficult. Reconstructing the debtor's books and records was never an easy matter. Yet it was unusual when a debtor was not insolvent for the 90 days before bankruptcy.

The presumption of insolvency in the Code recognizes this, but permits the creditor against whom the action is pending to come forward with evidence of solvency. The presumption is governed by Rule 301 of the Federal Rules of Evidence, which leaves the burden of proof on the issue of insolvency on the trustee, but does not require him to present evidence unless the defendant creditor first comes forward with some evidence of solvency.

Under 11 U.S.C. § 547(e)(2)(A) a transfer is deemed to be made when it takes effect between the parties, if it is perfected no more than 10 days after it takes effect. If it is perfected more than 10 days after it takes effect, the transfer is deemed made when it is perfected. § 547(e)(2)(B).

The perfection rule for personal property is essentially the same as found in Bankruptcy Act § 60a(2); a transfer of personal property is perfected "when a creditor on a simple contract cannot acquire a judicial

lien that is superior to the interest of the transferee."

In the present proceeding the court finds that "transfer" of property of the debtor occurred within 90 days of the filing of the petition. It was for the benefit of defendant and involved an antecedent debt.

The creditor put on no proof to overcome the presumption of debtor's insolvency. The proof indicated, in fact, that debtor was insolvent. The proof further showed that in a chapter 7 case the only asset for creditors will be the proceeds from the sale of the dozer. Defendant will receive a pro rata share. The "transfer" would enable the defendant to get all of the proceeds. This would be "more" than he would receive in a liquidation case under chapter 7.

From the proof and the entire record the court finds all six elements of a preference. The transfer will be avoided and the trustee may sell the dozer free and clear of any claimed lien.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.