In re Raymond R. BURNETTE, Stephanie Burnette, Debtors.

Richard P. JAHN, Jr., Trustee, Plaintiff,

v.

FIRST TENNESSEE BANK OF CHATTANOOGA, Defendant.

Bankruptcy No. 1–81–00300.
Adv. No. 1–81–0226.

United States Bankruptcy Court, E. D. Tennessee.

Oct. 26, 1981.

Harold L. North, Jr., Tanner, Jahn, Atchley, Bridges & Jahn, Chattanooga, Tenn., for plaintiff.

Arthur C. Grisham, Jr., Smith & Grisham, Chattanooga, Tenn., for defendant.

### MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The trustee in bankruptcy brought this suit against the bank to avoid its security interest in a pick-up truck belonging to the debtor, Raymond Burnette, Jr. He bought the truck and took possession of it on November 14, 1980.

The dealer's security interest was assigned to the bank. On December 4, 1980, twenty days after the sale, the bank filed an application for a certificate of title with its lien noted. Such a certificate was issued. The bank's security interest was perfected, at the latest, when it filed the application for a title certificate.[1] On February 11, 1981, the debtor filed a petition in bankruptcy.

The trustee contends that perfection of the security interest twenty days after it was given and within ninety days of bankruptcy effected a preferential transfer to the bank. The bank argues that it did not, because under Tennessee law its security interest was "continuously perfected" from the time of the sale.

The parties agree that there is only one question. It involves the "antecedent debt" requirement of the preference statute. Preferential transfers include only transfers "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). The other elements of a preferential transfer are not in dispute.

The question is when the transfer of the security interest occurred. Under the preference statute the general rule is that a transfer is made when it is perfected. 11 U.S.C. § 547(e)(2). Thus, a delay in perfecting a security interest may make it a transfer on account of an antecedent debt, even though between the debtor and the secured party the transfer and the debt were made at the same time. See, e. g., *In re Kelley*, 3 B.R. 651, 6 B.C.D. 395, 2 C.B.C.2d 15 (Bkrtcy.E.D.Tenn.1980); *In re Butler*, 3 B.R. 182, 6 B.C.D. 32, 1 C.B.C.2d 533 (Bkrtcy.E.D.Tenn.1980).

The preference statute provides its own exception to the rule that a transfer is made when it is perfected. If a transfer is perfected within ten days after it becomes effective between the parties, the delay is ignored. 11 U.S.C. § 547(e)(2)(A). That is the so-called ten day "grace period". The bank did not file within the ten days.

The bank argues that despite its failure to file within the ten days, its security interest was always perfected because it filed within a twenty day grace period given by § 9–301(2) of the Uniform Commercial Code (UCC) in Tennessee. It provides:

1. The Tennessee statutes do not make it clear that this is the time of perfection, but see *In re* *Poteet*, 5 B.R. 631 (Bkrtcy.E.D.Tenn.1980).

If the secured party files with respect to a purchase money security interest before or within twenty (20) days after the collateral comes into the possession of the debtor, he takes priority over the rights of . . . a lien creditor which arise between the time the security interest attaches and the time of filing.[2]

This is an exception to the general rule of § 9–301(1)(b):

Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of . . . a person who becomes a lien creditor without knowledge of the security interest and before it is perfected.

The problem in this case is determining how the twenty day grace period of UCC § 9–301(2) relates to the preference statute, particularly in light of the preference statute's own ten day grace period.

It could be argued that the UCC grace period is irrelevant because, in a conflict with state law, the preference statute would control. But the preference statute refers to state law to determine when a transfer is perfected. The bank's argument ultimately depends on the definition of perfection in the preference statute.

Section 547(e)(1)(B) provides:

For the purposes of this section . . . a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

In other words, a security interest is perfected when a judicial lien creditor cannot obtain priority over it.

The theory of the bank's argument is that a creditor who obtained a judicial lien within the twenty days could not have had priority over its security interest. Therefore, the bank argues it was "continuously perfected" during the twenty days, and of course, during the ten day grace period given by the preference statute.

The legislative history shows that Congress intended for ten days to be a uniform grace period.

The predecessor to the present statute was § 60 of the Bankruptcy Act of 1898. The original § 60 did not make it clear whether a transfer that had to be recorded to be effective against some creditors was to be treated as made when made or when recorded. In 1903 Congress amended § 60 to make the date of recording the time of the transfer. Congress's effort was less than successful. It amended § 60 several more times before 1938. *Hirschfeld v. Nogle*, 5 F.Supp. 234, 24 A.B.R.(N.S.) 363 (E.D. Ill.1933); 3 Collier on Bankruptcy ¶ 60.36 (14th ed. 1964). Finally, in 1938 Congress found the right track.

The fumbling of previous legislative enactments proved that drastic and incisive action was needed. Moreover, it must be borne in mind at all times that throughout a period of thirty-five years, beginning in 1903, it was fairly evident that Congress intended to strike down secret transactions by establishing a test as to perfection of transfer that would fix the date of notoriety of the transfer as the time when its preferential character should be determined. It was only the expression of this intent that proved faulty.

3 Collier on Bankruptcy ¶ 60.38 at 941–942 (14th ed. 1964).[3]

The 1938 amendment adopted a perfection test to determine the time of transfer. Perfection occurred when a bona fide purchaser from the debtor or a creditor could not acquire rights superior to the transferee. Unfortunately, the bona fide purchaser test was too stringent. Some transfers were avoided that should have been protected. 3 Collier on Bankruptcy ¶ 60.38

---

2. The grace periods of the preference statute and the UCC start at different legal times but in this case the same date. The debtor took possession of the car when the bank obtained its security interest.

3. By "date of notoriety" the writer means the date of recording when it is required for protection of the transfer. That is shown by the earlier amendments that specifically referred to recording. 3 Collier on Bankruptcy ¶ 60.37[3] & [4] (14th ed. 1964).

at 943–946 (14th ed. 1964). To cure the problem, Congress once again amended § 60.

The amendment is the forerunner to the present definition of perfection. Section 60(a)(2) of the Bankruptcy Act provided:

> For the purposes of subsections a and b . . . a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee.

Under § 60(a)(2) it was established that where priority over a later judicial lien required recording, then the time of recording generally was the time of the transfer. See, e. g., *Holahan v. Gore*, 278 F.Supp. 899 (E.D.La.1968); *In re Schindler*, 223 F.Supp. 512 (E.D.Mo.1963).

There was an exception, § 60(a)(7). It is the forerunner of an exception on which the bank also relies, § 547(c)(3). Section 60(a)(7) provided:

> (7) Any provision in this subdivision (a) to the contrary notwithstanding, if the applicable law requires a transfer of property other than real property for or on account of a new and contemporaneous consideration to be perfected by recording or delivery, or otherwise, in order that no lien described in paragraph (2) of this subdivision could become superior to the rights of the transferee therein . . . the time of transfer shall be determined by the following rules:
>
> I. Where (A) the applicable law specifies a stated period of time of not more than twenty-one days after the transfer within which recording, delivery, or some other act is required, and compliance therewith is had within such stated period of time; or where (B) the applicable law specifies no such stated period of time or where such stated period of time is more than twenty-one days, and compliance therewith is had within twenty-one days after the transfer, the transfer shall be deemed to be made of suffered at the time of the transfer.
>
> II. Where compliance with the law applicable to the transfer is not had in accordance with the provisions of paragraph I of this paragraph, the transfer shall be deemed to be made or suffered at the time of compliance therewith . . . .

Section 547(c)(3) of the Bankruptcy Code provides:

> (c) The trustee may not avoid under this section a transfer—
>
> . . . .
>
> (3) of a security interest in property acquired by the debtor—
>
> (A) to the extent such security interest secures new value that was—
>
> (i) given at or after signing of a security agreement that contains a description of such property as collateral;
>
> (ii) given by or on behalf of the secured party under such agreement;
>
> (iii) given to enable the debtor to acquire such property; and
>
> (iv) in fact used by the debtor to acquire such property; and
>
> (B) that is perfected before 10 days after such security interest attaches.[4]

This is known as the "enabling loan" exception. Section 60(a)(7) referred to grace periods under state law but limited their effectiveness to twenty-one days. A longer grace period provided by state law would not help a transferee who failed to perfect within twenty-one days.

The ten day grace periods in § 547(e)(2) and (c)(3) were meant to operate the same way. The idea was that the preference

---

**4.** The ten days in this provision and in (e)(2) run from apparently different starting dates, but they are the same in this case.

The use of the technical Article 9 term "attached" might have caused difficulty with transfers other than Article 9 security interests. Indeed, "becomes effective between the parties" is what "attached" means in the Article 9 context.

Gilmore Committee Report, reprinted in H.R. Rep.No.95–595, 95th Cong., 1st Sess. 209 at 213 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787; Collier on Bankruptcy, Appendix 2 (15th ed. 1979). See UCC §§ 9–204 & 9–303.

statute should establish a uniform grace period.

In 1966 the National Bankruptcy Conference established the "Committee on the Coordination of the Bankruptcy Act and the Uniform Commercial Code", more commonly known as the Gilmore Committee, after its chairman, Professor Grant Gilmore. In 1970 the committee recommended to Congress that § 60 be amended so that, without regard to grace periods under state law, § 60 would determine when late perfection made the transfer for an antecedent debt.

[P]resent § 60 was ... written in [pre-UCC] terminology, which leads to difficult, indeed logically insoluble, problems of statutory construction in applying the § 60 rules to Article 9 security interests. For example, § 60a(7) deals with the problem of late filing of security interests subject to a filing perfection requirement. The Article 9 filing system is quite different from the filing systems set up under the [pre-UCC] security statutes. For one thing, there is no grace period for filing under Article 9, except for purchase money security interests which get a 10-day grace period. Present § 60a(7) clearly assumes that all filing statutes have grace periods for all required filings. Consequently no one really knows what § 60a(7) means when it is applied to Article 9 filings and, indeed, the commentators ... have proposed divergent and contradictory solutions....

. . . .

The only change of substance from present § 60a(7) to Draft § 60a(2) is that the Draft allows a flat 21-day period for perfection, running from the time the "transfer" (security interest) "became effective between the parties," without any provision for cutting back the 21-day grace period if an applicable filing statute uses a shorter period.

Under Article 9 no grace period for filing is provided except for filing with respect to purchase money security interests; under § 9–301(2) a purchase money secured party [who] files within 10 days after the collateral comes into the debt-

or's possession takes priority over intervening lien creditors ...

The Committee concluded that the sanctions which Article 9 itself imposes on delayed perfection are such that no additional sanctions need be imposed through § 60.... While there may be no compelling reason in logic or policy for carrying forward the 21-day period ... that period has become familiar to the bar and is retained.

.... The Committee has seen no reason to complicate the statute by going into refined distinctions. Any kind of transferee gets 21 days .... If he delays more than 21 days, the late perfection is treated as a transfer for an antecedent debt.

Reprinted in H.R.Rep.No.95–595, 95th Cong., 1st Sess. 209, 212–213 (1977); Collier on Bankruptcy, Appendix 2 (15th ed. 1979).

The committee's recommendation was adopted by the Commission on Bankruptcy Laws of the United States, except the grace period was changed from twenty-one days to ten days. The commission recommended statutory language essentially like the language of the present statute:

A transfer of fixtures or of property other than real property is perfected when the transferee has acquired an interest in the property which is superior to the rights a subsequent judicial lien creditor could acquire in the property transferred.

A transfer occurs when it takes effect between the parties if perfected at that time or within ten days thereafter. If perfected after the ten days, the transfer occurs when perfection occurs....

Report of the Commission on Bankruptcy Laws of the United States, H.R.Doc.No.93–137, 93d Cong., 1st Sess., Part II § 4–607 at 168–175 (1973); Collier on Bankruptcy, Appendix 2 (15th ed. 1979).

The court believes that Congress intended to follow the recommendations of the Gilmore Committee and the Bankruptcy Commission. One commentator has said:

The earlier ten-day reference period provides a specific grace period, unlike Bankruptcy Act § 60(a)(7)(I), which provides

for a variable grace period of up to twenty-one days. Consequently, greater uniformity and less reliance on state laws are achieved under the Code . . . .

C. Young, Preferences under the Bankruptcy Reform Act of 1978, 54 Am.Bankr. L.J. 221, 231 (1980).

Section 60(a)(7) of the Bankruptcy Act provided an example of a preference statute that made state grace periods expressly relevant. Congress could have followed that example if it wanted them to be relevant under the present statute.

When Congress meant for state grace periods to qualify the trustee's avoiding powers, it provided so expressly. For example, if a security interest is unperfected at the time of bankruptcy, the trustee has superior rights in the collateral because he has the rights of a judicial lien creditor. 11 U.S.C. § 544(a)(1); Tenn.Code Ann. § 47–9–301(1)(b). However, if a grace period provided by state law has not expired at the time of bankruptcy, the secured party can perfect and thereby gain priority over the trustee. 11 U.S.C. §§ 546(b) & 362(b)(3). The statute that allows the grace period to operate in that situation is not applicable to the preference statute.[5] *In re Ken Gardner Ford Sales, Inc.*, 10 B.R. 632, 643 (Bkrtcy.E.D.Tenn.1981).

It also appears that Congress followed the Gilmore Committee's reasoning more closely than its recommendations. The committee recognized that ten days was the typical grace period under Article 9 of the UCC, but recommended a twenty-one day grace period. That would have given secured creditors more time for the purposes of the preference statute than state law generally allowed. Congress set the grace period at ten days, apparently so that the preference statute would treat secured creditors the same as state law. At the time the Bankruptcy Code was enacted, the

grace period provided by § 9–301(2) was ten days in almost all of the forty-nine states that had adopted Article 9 of the UCC. At present only ten states provide a grace period of more than ten days, and in some of those the period was increased after the Bankruptcy Code was enacted. UCC Rep. Serv., State Correlation Tables.

Under § 60(a)(2) of the Bankruptcy Act, some courts held that a security interest was protected against later judicial liens before it was perfected under the UCC. The courts reasoned that a judicial lien creditor could not obtain superior rights in the collateral after the financing statement was filed, and so the transfer occurred then, even though perfection under Article 9 occurred later. *In re King-Porter Company, Inc.*, 446 F.2d 722 (5th Cir. 1971); *In re Grain Merchants of Indiana, Inc.*, 286 F.Supp. 597 (N.D.Ind.1968) aff'd 408 F.2d 209 (7th Cir. 1969) cert. den. 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969); *In re Portland Newspaper Publishing Company*, 271 F.Supp. 395 (D.Or.1967) aff'd sub nom. *DuBay v. Williams*, 417 F.2d 1277 (9th Cir. 1969); *Rosenberg v. Rudnick*, 262 F.Supp. 635 (D.Mass.1967).

If the reasoning was strictly followed, a creditor with a floating lien could be preferred by a build-up in the collateral during the preference period. Section 547, particularly (e)(3),[6] was meant to overrule those cases and make it clear that the time of transfer is the time of perfection under Article 9.

The Gilmore Committee said:

In *DuBay v. Williams* . . . the Ninth Circuit apparently took the § 60a(2) provision to mean that a pre-filed . . . security interest in after-acquired property can never be a preference because, under the Article 9 scheme, there is never a moment when a "subsequent lien . . . could become superior" to the secured party's rights in the after-acquired property.

---

**5.** Section 546(b) provides:

The rights and powers of the trustee under section 544, 545, or 549 . . . are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires

rights in such property before the date of such perfection. . . .

**6.** Section 547(e)(3) provides:

For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

The Ninth Circuit reading neglects the fact that under Article 9 ... the after-acquired property interest is not perfected until the property is acquired .... Article 9 ... distinguishes between the accomplishment of an act of perfection (filing) and the attachment of the security interest (acquisition of the property) and requires both for "perfection."

The Draft definition ... seeks to negative the *DuBay* reading of ... § 60a(2) by making use of the Article 9 distinction .... Under the Draft definition there is no perfection until (1) any act required of perfection (e. g., filing) has been accomplished and (2) "an interest in the property" has been transferred.

Gilmore Committee Report, supra, 218–219. See also H.R.Rep. No. 95–595, supra, 179, 374.

This indicates that for Article 9 security interests, the definition should mean they are perfected at the moment when the last event required for perfection under Article 9 occurs.

It is evident that Congress did not intend for state grace periods to be relevant under the preference statute. There was to be a uniform rule throughout the nation. In any jurisdiction, a transferee was to have only ten days to perfect a transfer and thereby avoid the antecedent debt problem. Ten days was picked apparently because it corresponded to state law, but Congress did not specifically refer to grace periods under state law. The question is whether the definition can be interpreted to agree with Congress's intent. That involves not only whether the definition can be so interpreted but also whether that interpretation is the one most appropriate to its wording.

It may be easiest to compare interpretations. The one that agrees with Congress's intent depends primarily on the tense of the definition. A security interest "is perfected" when a creditor "cannot" acquire a superior judicial lien. This seems to require the court to look at the facts at any mo-

ment from that perspective. Suppose that a bank has a purchase money security interest that it has not filed to perfect, but the twenty day grace period has not expired. During the grace period and before the bank files, a creditor can possibly acquire a superior judicial lien. That depends on whether the bank actually does file within the grace period. If the bank does, then its security interest will have priority because its perfection will relate back to when the security interest attached, before the creditor acquired the judicial lien. But from the creditor's perspective, it could not know that was going to happen when it acquired its judicial lien.

This interpretation is consistent with Congressional intent. For Article 9 security interests, perfection would begin when the last step necessary for perfection occurred, but perfection would not relate back to an earlier step in the process of perfection.

The best way of looking at the bank's argument is to consider the definition as referring to a period of time. On that theory, the definition means a security interest is perfected during any period of time when a creditor cannot acquire a superior judicial lien.[7] The period of time can begin before the last step necessary for perfection occurs.

The court believes this interpretation is the more reasonable of the two. Though both interpretations are consistent with the wording of the definition, this one is less troublesome than the interpretation that agrees with Congress's intent. That interpretation strains the wording of the definition to conclude that the court must consider the facts from an earlier perspective, rather than as they turned out.

This interpretation is not objectionable on the basis of the floating lien cases. In those cases the courts held security interests perfected before they were perfected under the UCC. This preference statute

---

7. "Perfection" or "perfected" have a double meaning. They describe the act of perfecting a security interest or its state of being perfected.

was meant to overrule those cases. But the problem in this case is not that the definition will allow perfection to occur before perfection under the UCC. Perfection during the grace period, even by relation back, is perfection under the UCC.

Thus, the court agrees with the bank's argument. Since it perfected during the grace period, its security interest was perfected from the time it attached, both under state law and under the definition of perfection in the preference statute. There was no transfer on account of an antecedent debt.

Furthermore, the requirements of the § 547(c)(3), the enabling loan exception, were also met. The only requirement in dispute was whether the bank perfected its security interest within ten days after it attached.

■ The parties have not raised an issue that the court thinks must be considered. There is another exception that may protect this transfer. Section 547(c)(1) provides:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange . . . .

This exception was not meant to apply to situations like this. What Congress had in mind were transactions that the parties do not consider to be on credit though legally they are.

The first exception is for a transfer that was intended by all parties to be a contemporaneous exchange for new value and was in fact substantially contemporaneous. Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3–503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

S.Rep.No.95–989, 95th Cong., 2d Sess. 88 (1978); H.R.Rep.No.95–595, 95th Cong., 1st Sess. 373 (1977); Collier on Bankruptcy, Appendix 2 & 3 (15th ed. 1979).

In the transactions Congress had in mind, the debtor would receive something free of the claims of the transferor or third parties. The preference problem would arise only because of the unintended and short extension of credit. It may nevertheless be fair to apply the exception.

Certainly, the wording of the exception is too broad to limit it to the transactions that Congress may have had in mind. "Transfer" includes a transfer of a security interest, not just transfers of cash. 11 U.S.C. § 101(40).[8] "New value" includes an extension of new credit. 11 U.S.C. § 547(a)(2).[9] The question is whether the other requirements of the exception are met.

The stipulated facts do not make it exactly clear how this transaction was carried out. The security interest was given to the seller and assigned to the bank. The security agreement is part of the sale contract that was signed on the day of the sale. At the top of the contract the bank is shown as the assignee. Probably the transaction was carried out in the usual manner. The seller and the debtor arranged for the bank loan before the sale, the bank paid the seller, and the seller immediately assigned the debtor's note and security interest to the bank. There might be some question about who was the creditor to or for whose benefit the transfer of the security interest was made. It makes no difference in this case. The court does not doubt that the seller, the

---

8. "[T]ransfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest.

9. "[N]ew value" means money or money's worth in goods, services, or new credit . . . .

bank, and the debtor all intended a contemporaneous exchange for new value. The debtor was to receive the pick-up truck, with financing by the seller or the bank, in return for the security interest and his promise to pay.

The final question is whether the exchange was in fact substantially contemporaneous. On this point the court must look to the time of the transfer as determined under the preference statute. That raises the question considered at length above: When was the security interest "perfected" according to the preference statute's definition?

For the purpose of deciding the present question, the court assumes that its decision above was wrong. On that assumption, the transfer was perfected and made on the day the bank filed its application for a title certificate. Thus, the transfer was not made until twenty days after the debtor incurred the debt. The question is whether that was substantially contemporaneous.

The court believes it was substantially contemporaneous. The state legislature changed the grace period from ten to twenty days. At least two practical considerations must have supported the change. First, as a practical matter it may take a diligent secured party twenty days to perfect.[10] (Private enterprise may also be afflicted with a slow-moving bureaucracy.) Second, twenty days is a short enough period not to create an undue risk that others will acquire an interest in the collateral before notice of the security interest is given.[11] The court is not saying that state law can define "substantially contemporaneous". It cannot. But in this situation it gives a good indication of what should be expected of secured parties. The court notes that in discussing this exception as it applies to check transactions, the committee reports mention the thirty day provision of UCC § 3–503(2)(a). The court concludes that this was a substantially contemporaneous exchange.

In a prior decision the court pointed out that there might be some conflict between this exception and the enabling loan exception. *In re Kelley*, 3 B.R. 651, 655, 6 B.C.D. 395, 397, 2 C.B.C.2d 15, 20 (1980). In this case the court has decided that this exception can apply to the same situation. Regretfully, the court disagrees with Judge Paskay's opposite conclusion in *In re Christian*, 8 B.R. 816 (Bkrtcy.M.D.Fla.1981) (*Exchange Bank v. Christian*). Though the contemporaneous exchange exception was not meant to apply to this situation, it is broad enough to apply. It should not be held inapplicable on the ground that it cannot overlap with the enabling loan exception. The enabling loan exception can be viewed as defining one kind of "contemporaneous exchange", in the broad sense of those words. The enabling loan exception requires proof of specific facts that should be easily proved or disproved, whereas the contemporaneous exchange exception is vague as to what facts will satisfy it. The enabling loan exception is not rendered useless by holding that the contemporaneous exchange exception can apply to the same facts.

In light of the court's conclusions, the trustee cannot recover. An order will be entered accordingly.

This memorandum constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 752.

---

**10.** For most secured parties twenty days will include fewer than twenty working days.

**11.** Perfection essentially means that notice of the security interest has been given. J. White & R. Summers, Uniform Commercial Code Handbook 918–919 (2d ed. 1980).