**In re David Larry DAVIS, Debtor.**

**Charles A. GOWER, Trustee, Plaintiff,**

v.

**FORD MOTOR CREDIT COMPANY, and
Maxwell Ford Tractor, Inc.,
Defendants.**

**Bankruptcy No. 81–60100–THOM.
Adv. No. 82–6003–THOM.**

United States Bankruptcy Court,
M. D. Georgia,
Thomasville Division.

Aug. 19, 1982.

Charles A. Gower, Trustee, Columbus, Ga., for plaintiff.

Charles T. Staples, Columbus, Ga., for Ford Motor Credit Co. Frank C. Vann, Camilla, Ga., for Maxwell Ford Tractor, Inc.

## COMPLAINT OF TRUSTEE TO AVOID PREFERENCE

ALGIE M. MOSELEY, Jr., Bankruptcy Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Herein, the Trustee seeks to avoid a transfer under 11 U.S.C. § 547, Preferences. The stipulated facts show such preference, but Defendants rely upon 11 U.S.C. § 547(c)(1) as a defense. Herein, the Court finds that this defense is not available to the Defendants, and the transfer is avoided.

### FINDINGS OF FACT

The parties have stipulated facts, and upon those facts have submitted this adversary proceeding to the Court for decision. Facts as stipulated are as follows:

1.

On Friday, August 6, 1981, David Larry Davis (hereinafter referred to as the "Debtor") entered into a Retail Instalment Contract with Maxwell Ford Tractor, Inc., one of the Defendants herein (hereinafter referred to as "Maxwell Ford"), in Camilla, Georgia, for the purchase of a new 1981 Ford tractor, MC318M, Serial No. C649428, and a new 1981 Bush Hog Harrow, Model 1445–115, Serial No. 0751815, for a cash price of $49,300.00 (hereinafter collectively referred to as the "Collateral"). [Debtor received the collateral on August 6, 1981]. Pursuant to the terms of said Contract, Debtor was to pay to Maxwell Ford a cash down payment of $14,792.50, and the unpaid balance of the cash price in the amount of $34,507.50 was to be financed under the terms of said Retail Instalment Contract (hereinafter referred to as the "Contract"). Under the terms of said Contract, said unpaid balance, together with the finance charges and related filing fees, was to be paid in four (4) seasonable payments of $13,330.52 each, with the first such payment being due on August 6, 1982. The Collateral was made subject to a security interest in favor of Maxwell Ford under the Uniform Commercial Code in order to secure the payment of the obligations of the Debtor under said Contract.

2.

The Contract was mailed, together with the accompanying paperwork, to the Ford Motor Credit Company Branch office in Albany, Georgia. The Contract was purchased from Maxwell Ford by Ford Motor Credit Company, the other Defendant herein (hereinafter referred to as "FMCC"), on Tuesday, August 11, 1981 at its Albany Branch. As a result of said transfer and assignment by Maxwell Ford to FMCC, FMCC obtained a security interest in the collateral.

3.

It was the intent of the Debtor, Maxwell Ford and FMCC that the purchase of the Collateral and the creation of the security interest by the Debtor be a contemporaneous exchange for new value, including the extension of credit for the financing of the balance of the purchase price in the amount of $34,507.50 under the terms of the Contract through FMCC.

**4.**

FMCC filed a financing statement with respect to its security interest in the Collateral on August 26, 1981 in the Office of the Clerk of the Superior Court of Grady County, Georgia, which was designated as No. 81–772. Grady County, Georgia is the county of residence of the Debtor and is the appropriate place for the filing of said financing statement under the Uniform Commercial Code as adopted in Georgia.

**5.**

The Clerk in the FMCC Albany Branch who was in charge of handling the recording of all financing statements on retail instalment contracts purchased by FMCC at its Albany Branch went on vacation on Friday, August 14, 1981. She returned from her vacation on Monday, August 24, 1981. The check for recording the financing statement was obtained by her on Tuesday, August 25, 1981 and transmitted by mail to the Clerk of the Superior Court of Grady County, Georgia, who received the financing statement and recorded it on Wednesday, August 26, 1981.

**6.**

The Debtor did not pay and has not paid to Maxwell Ford the cash down payment provided for in said Contract of $14,792.50. The Collateral was returned by the Debtor to Maxwell Ford prior to the filing of the Debtor's Petition in Bankruptcy and has remained in the possession of Maxwell Ford.

**7.**

On November 16, 1981, the Debtor filed his Petition in Bankruptcy with this Court. Under date of December 2, 1981, Charles A. Gower was appointed Trustee of the estate of the Debtor (hereinafter referred to as "Trustee"). On January 28, 1982, the Trustee filed an Adversary Proceeding seeking to avoid the lien of FMCC and Maxwell Ford in the Collateral as a preference under 11 U.S.C. § 545 [should be § 547]. The day on which the financing statement was filed was less than ninety (90) days from the date the bankruptcy petition was filed by the Debtor.

**8.**

The parties to this action have entered into an agreement to allow Maxwell Ford to sell the Collateral with the proceeds to be held jointly by Maxwell Ford and FMCC pending the outcome of this proceeding and subject thereto. However, to date, no sale has been obtained.

**9.**

This Court has jurisdiction over this proceeding.

CONCLUSIONS OF LAW

**1.**

11 U.S.C. § 547(e)(2) provides:

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

Pursuant to this Code section, the transfer took place on August 26, 1981.

**2.**

The transfer having fulfilled all of the elements of 11 U.S.C. § 547(b) must be avoided, as it falls under none of the exceptions to avoidability prescribed by 11 U.S.C. § 547(c).

DISCUSSION

■ The purpose behind 11 U.S.C. § 547(b) allowing the trustee to avoid a preferential transfer is, among other things, to facilitate in bankruptcy a "policy of equality of distribution among creditors of the debtor." H.R.Rep.95–595, 95th Cong., 1st Sess., 177–178 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6138. The "transfer" was the creation of the security interest given by the Debtor to Defendants. The security interest was perfected more than 10 days after the date upon which it was created. Accordingly, the transfer is

deemed to have occurred on the date of perfection, that is, August 26, 1981. 11 U.S.C. § 547(e)(2)(B).

One of the exceptions to the trustee's avoidance powers, 11 U.S.C. § 547(c)(3), is specifically designed to meet the situation of creation of a security interest to secure a debt for value used to acquire the collateral. H.R.Rep.95–595, 95th Cong., 1st Sess. 373 (1977); Levin, *Introduction to Trustee's Avoiding Powers*, 53 Am.Bankr.L.J. 173, 187 (1979). This exception is designed to cover the so called "enabling loan" through which money lent is used to acquire collateral which is used to secure the debt. *Id.* 11 U.S.C. § 547(c)(3) provides:

(c) The trustee may not avoid under this section a transfer—

(1) . . .

(2) . . .

(3) of a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected before 10 days after such security interest attaches;

As is readily apparent from the above, this exception cannot apply in the case at bar. The lien in Defendants was perfected more than 10 days after its creation. Avoidance cannot be excepted under this subsection.

Defendants have asserted that the "transfer" of the lien falls under 11 U.S.C. § 547(c)(1). This subsection provides:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contempora-

neous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

Defendants assert that by reason of this exception the transfer to them of the security interest on August 26, 1981 cannot be avoided by the Trustee.

However, preliminary to the determination as to whether or not the facts of this proceeding fall within the defined exception of 11 U.S.C. § 547(c)(1) is the determination of whether a transfer of a security interest, as opposed to cash or something in the nature of cash, can ever be excepted from avoidance under this subsection. Courts are not in accord on this issue.

One line of cases holds, as is maintained by Defendants, that § 547(c)(1) is cumulative with § 547(c)(3), so that if transfer of lien securing an indebtedness on a cash advance is made "substantially contemporaneous[ly]" with the cash advance, the transfer is not avoidable even though the transfer does not fall within the exception stated in § 547(c)(3). *In re Burnette*, 14 B.R. 795, 8 BCD 255 (Bkrtcy.E.D.Tenn.1981); *In re Arnett*, 13 B.R. 267, 7 BCD 1222, 4 C.B.C.2d 1365 (Bkrtcy.E.D.Tenn.1981), *aff'd sub nom. Ray v. Security Mutual Fin. Corp.*, 17 B.R. 912, Bankr.L.R. ¶ 68,644 (E.D.Tenn.1982). As stated in *In re Burnette, supra,*

In a prior decision the court pointed out that there might be some conflict between this exception [11 U.S.C. § 547(c)(1) ] and the enabling loan exception [11 U.S.C. § 547(c)(3) ] . . . . Though the contemporaneous exchange exception was not meant to apply to this situation, it is broad enough to apply. It should not be held inapplicable on the ground that it cannot overlap with the enabling loan exception. The enabling loan exception can be viewed as defining one kind of "contemporaneous exchange," in the broad sense of those words. The enabling loan exception requires proof of specific facts that should be easily proved or disproved, whereas the contemporaneous exchange exception is vague as to what facts will satisfy it. The enabling

loan exception is not rendered useless by holding that the contemporaneous exchange exception can apply to the same facts. *Id.,* 14 B.R. at 803.

The effect of this approach is to give the preferred creditor two bites at the apple. If he has promptly perfected his security interest within the ten days[1] specified by 11 U.S.C. § 547(c)(3), he is automatically protected. However, if he has not promptly perfected, he may still maintain that, the delay notwithstanding, creation of the security interest was meant to be and was "substantially contemporaneous" with parting of value to debtor and he should be protected by 11 U.S.C. § 547(c)(1).

Other Courts have refused to give the preferred creditor the extra bite at the apple. *See In re Enlow,* 20 B.R. 480, 9 BCD 200, Bankr.L.R. ¶ 68,719 (Bkrtcy.Ind.1982); *In re Christian,* 8 B.R. 816 (Bkrtcy.M.D.Fla. 1981); *In re Meritt,* 7 B.R. 876, 7 BCD 28, Bankr.L.R. ¶ 67,883 (Bkrtcy.W.D.Mo.1980). As stated in *In re Enlow, supra* :

> The explicit reference by Congress in Section 547(c)(3) to enabling loans lends further support to the conclusion that Section 547(c)(1) is not applicable to the instant transaction. Through its enactment of section 547(c)(3) Congress intended to make that section—not Section 547(c)(1)—applicable to an enabling loan situation. To conclude otherwise would render the provisions of Section 547(c) "redundant and unnecessary." *Id.* 20 B.R. at 483, 9 B.C.D. at 201–202.

The effect of this approach is to require the preferred creditor to fit his situation into either of the two exceptions depending on whether the transfer assailed is one involving a lien or cash. If the creditor has retained a lien to secure an enabling loan (a purchase money lien), then he must fit his case into 11 U.S.C. § 547(c)(3) or face avoidance.

The issue then is really one of statutory construction. When a statute is clear on its face, its "plain meaning" must control, and there is no need to look beyond the statute itself to determine what it means. *Bread Political Action Comm. v. Fed. Election Commission,* —— U.S. ——, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982); *U.S. v. Oregon,* 366 U.S. 643, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961); *Glenn v. U.S.,* 571 F.2d 270, 271 (5th Cir. 1978); *U.S. v. Second Nat. Bank of North Miami,* 502 F.2d 535, 539 (5th Cir. 1974); *Arkansas Valley Industries, Inc. v. Freeman,* 415 F.2d 713, 717 (8th Cir. 1969). But when the statute is not clear on its face, resort may and must be had to its legislative history so that the statute may be construed in conformity with the drafters' intent. *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 2186–2187, 45 L.Ed.2d 319 (1975). Likewise, resort may be had to the several principles and maxims of statutory construction. *See, e.g., National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Such principles and maxims are guides to determining legislative intent, and must yield in the face of clear contrary evidence of legislative intent. *Id.*

It is abundantly clear, from the legislative history, that the drafters of 11 U.S.C. § 547(c)(1) did not design it to cover such a situation as is presented under the facts of this proceeding. This subsection was designed to fit in the situation of a contemporaneous exchange of cash or the equivalent of cash by the debtor for something of value, *e.g.,* the situation where the debtor acquires new property and pays for it at or about the same time, with cash or the equivalent of cash. *See* H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 373 (1977); Levin, *Introduction to Trustee's Avoiding*

---

1. The spirit of the preference section is to provide a creditor to whom is transferred a purchase money security interest (e.g., security interest securing an enabling loan) an exception to avoidance if he is promptly perfected. It is clear that the section anticipates "prompt perfection" to be perfection within ten days. See 11 U.S.C. § 547(c)(3)(B); 11 U.S.C.

§ 547(e)(2)(A). This ten day time limit is taken from U.C.C. 9–301, which provides for a ten day "continuous perfection" period for purchase money liens, e.g., a purchase money lien perfected within ten days of its creation is treated as perfected from date of creation. H.R.Rep.95–595, 95th Cong., 1st Sess., 212 (1982).

*Powers*, 53 Am.Bankr.L.J. 186 (1979). The legislative history states at H.R.Rep.No.95–595, U.S.Code Cong. & Admin.News, 1978, p. 6329:

> The first exception is for a transfer that was intended by all parties to be a contemporaneous exchange for new value, and was in fact substantially contemporaneous. Normally, a check is a credit transaction. However, for the purposes of the paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3–503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

From this it is clear that the intent of the drafters was that the only type of credit transaction which would result in a transfer under this exception would be a transaction by which a payment is made by check, which, as is noted, is for all practical intents and purposes really a cash transaction.

 Plainly, the drafters meant for 11 U.S.C. § 547(c)(1) to be an exception protecting transfers of cash or quasi-cash arising out of transactions for new value to the debtor. To permit situations such as presented in this adversary proceeding to be "squeezed" into this exception would frustrate the expressed intent of Congress.

 The traditional rules of statutory construction lead to the same result. It is an ancient maxim of statutory construction that where a statute provides for a remedy or for a thing to be done in a particular way then it negates all other similar remedies or alternative ways that the same thing might be done. *National Railroad Passenger Corp. v. National Association of Railroad Passengers, supra; Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1085 (5th Cir. 1980). This maxim is stated *expressio unius est exclusio alterius. Id.* 11 U.S.C. § 547(c)(3) provides a mechanism by which liens to secure enabling loans might be excepted from avoidance. In so doing it negates the applicability of other means of exception. 11 U.S.C. § 547(c)(1) is in general; 11 U.S.C. § 547(c)(3) is specific; it refers to "a security interest" such as in this adversary proceeding.

 Similarly, another rule of construction is that each part of a statute should be construed as having a meaning, if a reasonable construction of the whole statute will so permit. *In re Enlow, supra*, 20 B.R. at 483, 9 B.C.D. at 202. If 11 U.S.C. § 547(c)(1) is given a construction which would permit it, as is argued by the Defendants, to be applied to transfers of liens to secure enabling loans, then 11 U.S.C. § 547(c)(3) becomes redundant and unnecessary. *Id.*, 20 B.R. at 483, 9 B.C.D. at 201–202. There is a reasonable construction available to 11 U.S.C. § 547(c) which would prevent this. This construction is that 11 U.S.C. § 547(c)(1) only applies to "substantially contemporaneous exchanges" of cash or the equivalent of cash.

 For these reasons, 11 U.S.C. § 547(c)(1) cannot apply as an exception to the avoidance of transfers of liens to secure enabling loans. Such liens, if they are at all to be excepted from avoidance, must fall within 11 U.S.C. § 547(c)(3). The lien herein assailed as avoidable cannot fall within that exception since perfection was accomplished more than 10 days after creation of the security interest.