**In re RUEMIL CONTRACT INTERIORS, INC., Debtor.**

**Harold YOUNG, as Trustee in Bankruptcy of Ruemil Contract Interiors, Inc., Debtor, Plaintiff,**

**v.**

**CHIEF ASSOCIATES, Defendant.**

Bankruptcy No. 80 B 10951 (PBA).

Adv. 83–5778–A.

United States Bankruptcy Court, S.D. New York.

Oct. 27, 1983.

Horvath & Young, New York City, for trustee; Harold Young, New York City, of counsel.

Bambury & Bambury, New York City, for defendant; J. James Bambury, New York City, of counsel.

PRUDENCE B. ABRAM, Bankruptcy Judge.

On June 17, 1982 Harold Young, as Trustee in Bankruptcy of Ruemil Contract Interiors, Inc., instituted the present adversary proceeding seeking to recover a transfer made to the defendant, Chief Associates ("Chief") alleged to be a preference in the amount of $15,195.70 under Bankruptcy Code § 547, 11 U.S.C. § 547. An answer was filed and thereafter both parties moved for summary judgment on the grounds that the issues are ones of law.

The relevant facts are as follows: On June 20, 1980 Ruemil Contract Interiors, Inc. (the "Debtor") filed a petition under Chapter 7 of the Bankruptcy Code. An order for relief was entered simultaneously therewith. Harold Young (the "Plaintiff") was appointed interim trustee and thereafter became the permanent trustee.

About two weeks prior to the filing of the petition and on June 4, 1980, the Debtor assigned to Chief a security interest it held in property of Billbobich, Inc. ("Billbobich"), which secured an indebtedness to the Debtor of $15,195.70. The security interest had been perfected and was in the furniture and equipment of an operational restaurant, consisting of such items as dozens of tables, chairs, silverware, dishes, as well as

such items as ranges and refrigerators and other kitchen equipment. The Debtor owed Chief in excess of $7,500.00 at the time it assigned to Chief the Billbobich security interest.

Over one year later and on July 31, 1981 a sheriff's sale, pursuant to a levy on behalf of Moville Fabrics, Inc., a judgment creditor of Billbobich, was held. The property sold by the sheriff consisted of the same property covered by the Debtor's security interest and the Debtor's security interest was the only lien of record. Chief purchased the property at the sheriff's sale for $100.00. Subsequent thereto, Chief resold the Billbobich property for an undisclosed sum and presumably released the security interest.

For the reasons which follow, the court concludes that the assignment of the security interest to Chief constituted a preferential transfer under section 547 of the Bankruptcy Code, 11 U.S.C. § 547,[1] that Chief received value from the security interest and that the transfer is voidable by the trustee and the value recoverable for the estate.

■ The provisions of the Bankruptcy Code allowing the trustee to recover preferential transfers are intended, *inter alia,* to assure equality of distribution of the debtor's estate. *In re Davis,* 22 B.R. 644 (Bkrtcy.D.Ga.1982). This general principle is of assistance in resolving this situation.

■ A preference is a transfer within 90 days of the filing of the petition on account of an antecedent debt made while the debtor is insolvent that enables a creditor to receive more than it would in a Chapter 7 case if the transfer had not been made. The term "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." 11 U.S.C. § 101(41). There can be no dispute that the assignment by the Debtor to Chief of the security interest in the Billbobich goods was a transfer within the meaning of the definition. *See generally* 4 Collier on Bankruptcy ¶ 547.08 (15th ed. 1979). The other elements of a preference are also satisfied as the trustee has the benefit of the unrebutted presumption of insolvency and it is apparent that Chief has received more than it would have since it appears that the trustee has been unable to collect an estate sufficient to generate any dividends for unsecured creditors.

Chief, however, asserts that while the transfer of the Billbobich security interest to it may have been a preferential transfer, Chief's purchase of the Billbobich property at the sheriff's sale and subsequent resale was unrelated to the transfer. Chief asserts that it was simply in the position of any third party buyer at the sale and that therefore the trustee's complaint must fail. Since Chief has declined to provide the specific details of its resale of the Billbobich goods, it is appropriate for the court to make certain comments on the sale. First, the purchase price of $100 by Chief for the Billbobich goods was nominal. Even if all of the goods covered by the Debtor's security interest were no longer in existence, the nature of the goods and their quantum pre-

1. Section 547 provides in relevant part:
   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or
   (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
   (i) was an insider; and
   (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under Chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

cludes a finding that $100 represented their fair market value. That this assumption is correct is indicated by their resale by Chief for an undisclosed, but not nominal, price. The only apparent reason why Chief would have been able to effect such an advantageous purchase at the sheriff's sale was because the Billbobich goods were sold subject to the Debtor's security interest. Chief's ability to satisfy that lien as a result of the assignment resulted in a transfer to Chief of value equally subject to avoidance as preferential as the original assignment.

Stating that Chief did not receive payment as a direct result of the security interest since it did not foreclose the lien begs the question. Chief was able to purchase the Billbobich goods for the nominal sum of $100.00 only because no other bidder was willing to purchase the goods subject to the lien. The transfer of the Debtor's security interest to Chief enabled it to receive the value of the goods by resale by virtue of Chief's ability to satisfy the lien. "If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it." *National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 184, 32 S.Ct. 633, 635, 56 L.Ed. 1042 (1912). *See also In re Sun Railings, Inc.*, 5 B.R. 538 (Bkrtcy.S.D.Fla.1980).

It is clear that, had the Debtor not transferred its security interest in the Billbobich goods to Chief, the first proceeds recovered from the sheriff's sale would be property of the Debtor's estate. No different result should follow if the assignment may be avoided as a preferential transfer. As noted above, Chief has not disclosed the amount Chief subsequently received on the resale. Nor is the exact amount of the debt from the Debtor to Chief known. Plaintiff's statement of material facts states "6. At the time of said assignment, i.e., June 4th, 1980 the Debtor was indebted to Defendant in the sum of upwards of $7,500." However, the precise amount due the Debtor by Billbobich was $15,195.70, or almost twice as much as the Debtor owed to Chief.

If the transfer were not avoidable as a preference, Chief would be entitled to retain any amounts received over the amount the Debtor owed to it only if the assignment was absolute. As the assignment itself has not been provided to the court, the court has been unable to determine whether it is absolute or conditional. The timing of the transfer to Chief and the insolvency of the Debtor would seem to mandate a finding that an absolute transfer of property of a value twice the Chief debt was a fraudulent conveyance to the extent of the excess over the amount of the debt, although the court observes that Chief was unable to benefit from the assignment until over one year after the Chapter 7 petition was filed. In setting aside the preferential transfer, the court finds that the trustee is entitled to the entire proceeds received by Chief on the resale of the Billbobich property subject to the following limits: a) Chief is entitled to reimbursement for any reasonable expenses it incurred in making the purchase and resale; and b) Chief would be entitled to retain any amount received above the amount of the Debtor's security interest.

Settle order and judgment on notice.