In the Matter of Thomas Howard
HAMILTON, Debtor.

**HOWARD THORNTON FORD,
INC., Appellant,**

v.

Michael H. FITZPATRICK, Appellee.

No. 88–1251.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1990.

Rodney R. Elkins, Dallas, Tex., for appellant.

Dave Ellerbe, George Tarpley, Sheinfeld, Maley & Kay, Dallas, Tex., for appellee.

Before BROWN, JOHNSON, and DAVIS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The question is whether the Texas UCC 20 day grace period or the Federal Bankruptcy § 547(c) 10 day grace period for perfection of a security interest in personal property applies. Not too surprisingly we hold that the bankruptcy law prevails and thus affirm the judgment of the bankruptcy court as affirmed by the district court in favor of the trustee.

*A Father's Concern for a Daughter*

The scenario, unlike the interlocking complex legal issues, is simple. The bankruptcy petition of the vehicle purchaser (Debtor) was filed in Tennessee on May 23, 1985. Well within the 90 day preference period the trustee sought and obtained recovery of a BMW sedan [1] which the Debtor had purchased for his daughter from the Dealer (Howard Thornton Ford, Inc.) in March of that year.

The significant facts, largely undisputed and where uncertain, by findings and conclusions well above the Plimsoll Line of F.R.Civ.P. 52(a) are straightforward and simple. On March 6, 1985 the Debtor, as a then pre-bankruptcy purchaser, negotiated a loan with Interfirst Bank of Dallas, NA

---

1. Actually the controversy is over the proceeds after foreclosure sale by the Dealer after the lender bank repossessed and surrendered the vehicle to the Dealer under its recourse guarantee.

(the Bank) and signed a promissory note on that date. The Dealer began processing the necessary documents to transfer title and create a lien in favor of the Bank on March 2d. Two of these documents are significant: Form 130–U "Application for Texas Certificate of Title—Seller, Donor or Trader's Affidavit" (Appendix A) and Form 31 "Tax Collector's Receipt for Title Applicants" (Appendix B). Form 130–U application has spaces in which the preparer is to enter both the date of the lien (block 16 listed as March 2, 1985) and the date of the Tax Collector's Receipt (block 16 listed as March 19, 1985), Form 31 Tax Receipt lists March 6, 1985 (block 30) as the date of lien and March 19, 1985 (block 1) as the date the receipt was issued. The Certificate of Title was issued by the Department of Highways and Public Transport (DHPT) on May 10, 1985 reflecting the date of the lien as March 2, 1989.

### Bankruptcy Upsetting to Expectations

The bankruptcy judge and the district court fixed March 8, 1985 as the date on which the daughter picked up the car little aware that she would shortly lose this luxury as the Bank on August 25, 1985 repossessed it and then surrendered it to the Dealer who sold the car (*see* note 1, *supra*). The bankruptcy trustee then sought recovery of the vehicle as an asset of the estate claiming the transfer to the Bank was an avoidable preference under § 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b).[2] That section prescribes five requirements for establishing a preference, the first three of which are undisputed: (1) for the benefit of the creditor (Bank–Dealer), (2) made while the Debtor was insolvent, (3) which occurred within 90 days of the date of the filing of the bankruptcy petition. Besides disputing the last two: (4) to be on account of an antecedent debt and (5) enable the creditor to receive more than it would have if proceeding under Chapter 7, the Banker–Dealer contend affirmatively that the transfer was non-avoidable under § 547(c).[3]

### Looking to State Law A Congressional Point of View

In the analysis of the problem of supremacy/conflict between state and federal (bankruptcy) law it is worthwhile to emphasize that the problem is not accidental. It is indeed the result of a deliberate congres-

---

2. 11 U.S.C. § 547:
   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or
   * * * * * *
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under Chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

3. Section 547:
   (c) The trustee may not avoid under this section a transfer—
   (1) to the extent that such transfer was
   (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange of new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;
* * * * * *
(3) of a security interest in property acquired by the debtor—
(A) to the extent such security interest secures new value that was—
(i) given at or after the signing of a security agreement that contains a description of such property as collateral;
(ii) given by or on behalf of the secured party under such agreement;
(iii) given to enable the debtor to acquire such property; and
(iv) in fact used by the debtor to acquire such property; and
(B) that is perfected on or before 10 days after the debtor receives possession of such property;
*See* note 2, § 547.11, Collier on Bankruptcy. § 547(c)(3)(B) originally provided transfer was protected if "perfected *before 10 days* after such security interest *attaches.*" The Bankruptcy Amendments and Federal Judgeship Act of 1984 conformed § 547(c)(3)(B) to UCC § 9.301(2) by changing "before 10 days" to "on or before 10 days" and by changing "after such security interest attaches" to "after the debtor receives possession of such property."

sional determination to rely much on the basis of state law, some, if ever, specifically identified and frequently obscure.

For example, Congress in enacting § 547 of the Bankruptcy Act[4] establishing the trustee's power to avoid preferential transfers prescribed in § 547(e)(1)(B)[5] established that "a transfer of ... property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Since the federal law does not prescribe the circumstances under which or when a creditor on a civil contract cannot acquire a judicial lien superior to the interest of the transferee, the source for such definitive standards must be the state law. This automatically sends us to the Texas Business and Commerce Act (hereafter cited as UCC) The transaction involved here comes within the UCC definition of a purchase money security interest, sometimes referred to as enabling loans,[6] and is substantially subject to priorities over an unperfected security interest.[7] Perfection of such a security interest calls ordinarily for the timely filing of a financing statement. § 9.302(a) UCC which is not applicable to the sale-financing of automobile vehicles because of the express exclusion, § 9.302(c)(2) UCC for transactions covered by the Certificate of Title Act, Art. 6687-1, Vernon's Civil Statutes of Texas.[8]

### On the Road Again The Certificate of Title Act

This automatically brings into play Art. 6687-1 the Certificate of Title Act (hereaf-

---

**4.** The 1978 Bankruptcy Reform Act and Judicial Act of 1984.

**5.** Section 547:

(e)(1) For the purposes of this section—
\* \* \* \* \* \*
(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.
(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—
(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;
\* \* \* \* \* \*
(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

**6.** § 9.107, Definitions: "purchase money security interest". A security is a "purchase money security interest" to the extent that it is
(1) Taken or retained by the seller of the collateral to secure all or part of its price; or
(2) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

**7.** ˙ § 9.301, Person Who Take Priority Over Unperfected Security Interest: Right of "Lien Creditor".
(a) Except as otherwise provided in Subsection (b) and unperfected security interest is subordinate to the rights of
(1) Persons entitled to priority under Section 9.312;
(2) A person who becomes a lien creditor before the security interest is perfected;
\* \* \* \* \* \*
(b) If the secured party files with respect to a purchase money security interest before or within 20 days after the debtor receives possession of the collateral, he takes priority over the rights of a transferee in bulk or of a lien creditor which arise between the time the security interest attaches and the time of filing.
(c) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy, or the like and includes ... a trustee in bankruptcy from the date of the filing of the petition....

**8.** § 9.302, When Filing is Required to Perfect Security Interest; Security Interest to Which Filing Provisions of this Title Article Do Not Apply.
(a) A financing statement must be filed to perfect all security interest except the following:
(c) The filing of a financing statement otherwise required by this Chapter is not necessary or effective to perfect a security interest in property subject to
(2) The following statutes of this [Texas] state: the Certificate of Title Act, as amended (Article 6687-1, Vernon's Texas Civil Statutes);
(d) Compliance with the statute ... described in Subsection (c) is equivalent to the filing of a financing statement under this Chapter, and a security interest in property subject to the statute ... can be perfected only by compliance therewith ...

ter Title Act).[9] Of principal importance is § 41 which provides "(a) except for a security interest in motor vehicles held as inventory by a person who is in the business of selling motor vehicles, a security interest ... in a motor vehicle that is the subject of a first sale may be perfected only by notation of the lien on the certificate of title in accordance with this Act."[10] The prior § 42 expressly provided that presentation of an application for certificate of title (form 130–U) with lien disclosed thereon and tender of the filing fee to the designated agent of the department or acceptance of the application by the designated agent of the department constituted notation of the lien under the Act was amended in 1971,[11] the equivalent is established by §§ 31, 32, 32a, 42[12] which reflect that the Tax Collector or his/her deputy is the principal means by which a security interest can be perfected.

Section 31 expressly provides that the "... designated agent [Tax Collector or deputy] ... receiving an application for certificate of title shall [on compliance with required conditions] ... issue a receipt marked 'Original' to the applicant. But if a lien is disclosed, the ... receipt shall be issued in duplicate, one of which [to be] marked 'original' [which] shall be mailed to the first lien holder, ... the other copy ...

marked 'Duplicate Original' shall be ... delivered to the applicant." Pending the issuance of actual certificate of title the copy delivered to the applicant authorizes the operation of the vehicle for a limited period of time.

Section 32 provides that the "... designated agent [Tax Collector or deputy] shall, on the same date issued by him, forward to the [DHPT] ... copies of all receipts issued by [such designated agent] ... and the [DHPT] within five (5) days ... shall issue the certificate of title...." If a lien is "disclosed in the application the said certificate of title shall be issued in duplicate, one [to be] marked 'Original' which shall be mailed to ... the first lien holder ...; the copy [to be] marked 'Duplicate Original' shall be sent to ... the applicant...."

### Conflict Between UCC and § 547(c)

■ All this means is that, most favorable to them, the Banker–Dealer's lien was not perfected until March 19, 1985 when the receipt was dated and issued (see block 1, Form 31, and block 16, Form 130–U). But if the Texas law applies to this purchase money security interest[13] the Bank–Dealer's security is saved by §§ 9.301(b), 9.312(d)[14] since perfection occurred within

---

9. The Debtor–Bank–Dealer transaction falls within the Title Act's definition:

§ 13. The term "Receipt" means the written acknowledgement by a designated agent of the Department of having received an application for a certificate of title and the required fee, on such form as may be prescribed by the Department from time to time.

§ 24. Defines "Certificate of Title" to reflect (g) names and addresses of lienholders.

§ 25. The term "department" means the State Highway Department of the State of Texas.

§ 26. The term "Designated Agent" means each County Tax Collector in this State who may perform his duties under this Act through any regular deputy.

10. Amended by Acts 1983, 68 Leg., p. 667, Ch. 151, eff August 29, 1983.

11. *See* 62d Leg., p. 896, Ch. 123, § 5, eff, May 10, 1971.

12. § 42. Presentation of an application for a certificate of title with the lien disclosed therein

and tender of the filing fee to the designated agent of the Department or acceptance of the application by the designated agent of the Department constitutes notation of the lien under this Act. The time of the notation of a lien under this Act is deemed to be the time of filing of the security interest for purposes of Chapter 9 of the Business and Commerce Code.

13. *See* note 6, supra.

14. *See* § 9.301(b) UCC:

If the secured party files with respect to a purchase money security interest before or within 20 days after the debtor receives possession of the collateral, he take priority over the rights of a transferee in bulk or of a lien creditor which arise between the time the security interest attaches and the time of filing.

*See also* § 9.312(d) UCC:

a purchase money security interest in collateral ... has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives

20 days of the date (March 8, 1985) on which the Debtor or his daughter-agent received possession of the vehicle.

Contrary to Banker–Dealer's contention there is no basis for holding Form 130–U was somehow completed earlier than March 19 since its block 16 refers to the official number of Form 31 which is imprinted in the upper left hand and right hand corner of Form 31 and the receipt date in block 16 (Form 130–U) corresponds to block 1 of Form 31 (March 19, 1985).

We hold that pursuant to the interlocking connection of the UCC and the Certificate of Title Act the Bank–Dealer purchase money security interest was perfected on March 19, 1985 on the issuance of the Receipt (Form 31) by the Tax Collector or deputy. Considering the importance—both to the state economy and state treasury— of the business of automobile sales and installment financing [15] it is plain that Texas does not, as literally required by § 41 (*see* note 10 and text, *supra*) require physical notation on the actual certificate of title as ultimately issued by the DHPT. Rather perfection is accomplished as and when the Form 31 Receipt is dated and issued by the Tax Collector or his authorized deputy [16]

who by statute is the Designated Agent for the DHPT.[17]

Since Banker–Dealer cannot establish with sufficient force to overcome the trial judge's finding that possession by Debtor-agent (daughter) occurred after the date fixed (March 8) to bring perfection within 10 days their only hope of success depends on establishing that the 20 day Texas grace period, not the 10 day bankruptcy grace period, excuses this 11 day delay.[18] The Supremacy of Texas/Federal law must therefore be determined.

### Section 547(c) Prevails

This brings us face to face with the conflict raised by § 547(c) of the Bankruptcy Code which provides that the trustee may not avoid a § 547(b) preference (*see* note 2, *supra*) of a security interest in property acquired by the debtor under prescribed conditions if it is perfected on or before 10 days after the debtor has received possession of the collateral (*See* note 3, *supra.*)

The relative supremacy of the Texas 20 day versus the federal 10 day grace period has not been widely litigated. Two bankruptcy court decisions reach opposite re-

---

possession of the collateral or within 20 days thereafter.

**15.** Accepted by the Texas Comptroller are the statistics compiled by R.L. Polk & Co.:

|  | 1987 | 1988 |
|---|---|---|
| New Car Registrations | 531,541 | 553,958 |

**16.** *See* § 26, Art. 6687–1: "The term 'Designated Agent' means each County Tax Collector in this State who may perform his duties under this Act through any regular deputy."

And *see* § 56, Art. 6687–1 holding designated agents duty bound to comply with all provisions and on failure to do so shall be liable on the official bond for any damages suffered.

**17.** As will be further amplified the practice followed by the Dealer and local Tax Collector essentially followed the official instructions on the use of Form 31. These are contained in the publication issued by DHPT which identifies the entries by "fields" not blocks as used herein. Form 31 is a snap-out manifold form containing five color-coded receipt copies. It is so designed that all registration data is recorded on the left portion of the form, (fields 1–29) and all tax and lien information is recorded on the right portion (fields 30–40). The note to fields 26, 27, 28 which records the name of the county,

the county number specifically includes "the initials ... of the deputy who issued form 31."

Field 30 as to recording of the "first lienholder" emphasizes that the information should be correct and complete as to the date of lien, name of lienholder and mailing address ... so that the postal service "can deliver the original title to the lienholder." As to "second lienholder," Field 31 remarks that, "No title document is issued to the 'second lienholder.'"

Instructions on the disposition of the multifold copies of the Form 31: copy # 4 "original lienholder's copy" [white] shall be furnished in its entirety to the lienholder. The owner's copy # 5 (blue) marked "duplicate original owner's copy" is issued in its entirety to the owner.

**18.** Under 547(g) the burden of proof was clearly on Banker–Dealer to establish the terminal dates of possession and hence perfection.

§ 547(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

sults. *In re Scoviac,* 74 B.R. 635 (Bankr. N.D.Fla.1987) holds that the 10 day Bankruptcy Act period controls over the Florida 15 day statute § 679.301, comparable to the requirement of the Texas UCC § 9.301(b). (The security interest was not perfected)? The court applied the Eleventh Circuit statement in *Davis, Gower v. Ford Motor Credit Corp.,* 734 F.2d 604, 607 (1984): "the establishment of a ten day grace period was an effort to create a national uniform perfection period for enabling loans."

The other case, *In re Burnette,* 14 B.R. 795 (Bankr.E.D.Tenn.1981) on the theory of a continuous perfection throughout the Tennessee 20 day period the court held the state period (20 days) controlled over the § 547(c) 10 day period. The court nevertheless emphasized "that the legislative history shows that Congress intended for ten days to be a uniform grace period." *Id.* at 797.

In this choice we prefer *Scoviac* over *Burnette* as do treatises commentators. *See,* e.g., Collier on Bankruptcy, § 547.11 Purchasing Money Security Interests (enabling loans).[19]

*See especially,* Breitowitz, *Article 9 Security Interests as Voidable Preferences,* 3 Cardozo L.Rev. 327, —— (1982) which traces in detail the background of the 1978 B.R.A. including § 60 (p. 328, n. 66) and 2. Grace Periods for Purchase Money Security Interests p. 394, 396–99; also Hogan, *Bankruptcy Reform and Delayed Filing Under the U.C.C.,* 35 Ark.L.Ref. 25, —— (1981), p. 43, 46–49; and Countryman, *The Concept of a Voidable Preference in Bankruptcy,* 38 Vand.L.Rev. 713, —— (1985), 3. The Enabling Loan Excepted, p. 776, 780–81.

**19.** *See also,* the unanimous decision by all Courts of Appeals in requiring 10 day perfection

*At Last, The Facts So Unhealthful*

To prevent interference with the flow of the intricate interplay between the Bankruptcy Act, the UCC and the Title Certificate Act we purposely deferred discussion of the fact pertaining to the processing of the application (Form 130–U) and Form 31 Receipt.

The facts are sparse and not the least bit helpful to Banker–Dealer. Ford, for Bank–Dealer, acknowledged that some of his employees on the premises were bonded deputy Tax Collectors and that this system has prevailed for a number of years. He did not know who filled out Form 130–U or Form 31 and particularly the date, 3–19–85. Nor did he know the date on which the Debtor-daughter-agent took possession of the vehicle. The balance of the evidence was an exploration of possible hypotheticals on what might have occurred, whether the documents had been, or not been, processed partially on the Dealer's premises or partially in the Tax Collector's regular office. The bankruptcy judge was not clearly erroneous in rejecting such hypotheticals and any implications therefrom.

Add to this essentially negative record Form 31, block 28, deputy showed the initials "MW" as the deputy. No one offered a single stitch of testimony on the identity of MW whether a deputy at the Dealer's premises, or at the Tax Collector's main office.

The Banker–Dealer wholly failed to carry their § 547(g) burden of establishing (i) the date of delivery of the vehicle by Dealer and (ii) that the date and issuance of the Form 31 Receipt was at a time other than March 15, 1985.

AFFIRMED.

in the contemporary exchange exception of § 547(c)(1). *Id.* n. 5.

**1236**

## APPENDIX A

Form 130-U
(Rev 8-84)

**APPLICATION FOR TEXAS CERTIFICATE OF TITLE**
**SELLER, DONOR OR TRADER'S AFFIDAVIT**

**7814990**

• For all vehicle classifications • *TYPE or PRINT*

| 1 Make of vehicle | 2 Vehicle identification number | | 3. Year model |
|---|---|---|---|
| BMW | WBAAK7404F8767388 | | 1985 |

| 4 Body style | 5 Texas license no | 6 Tons | 6a Empty weight | 7 Odometer Reading |
|---|---|---|---|---|
| 2-DOOR SEDAN | 722GUL | | 2700 | 20. |

| 8 Previous owner (Seller, donor, trader) | City. | State | 9. Dealer no. |
|---|---|---|---|
| HOWARD THORNTON FORD, INC., FRISCO TX | | | P-16029 |

10 New owner (Purchaser, donee, trader) name, local resident address, city, state, zip code

HOWARD T. HAMILTON
P.O. BX 12086
DALLAS TX. 75225

THIS MOTOR VEHICLE IS SUBJECT TO THE FOLLOWING LIENS AND NONE OTHER

| 11 1st lien date | 1st lien holder name address, city, state, zip code |
|---|---|
| 03/02/85 | INTERFIRST BANK DALLAS, N.A.<br>P.O. BOX 83750<br>DALLAS, TX 75283 |

| 12 2nd lien date | 2nd lien holder name, city, state |
|---|---|
| | |

☐ No change in ownership

14. X  5% Sales and Use Tax

| | | |
|---|---|---|
| Sales price | | 18315.00 |
| Less trade in | N/A          TAXABLE VALUE | 18315.00 |
| 5% tax on Taxable Value | | 915.75 |
| Less tax paid to_____ — AMOUNT OF TAX DUE $ | | 915.75 |

XX $10 APPLICATION FEE FOR CERTIFICATE OF TITLE ☐ $5 Even Trade Tax *(Traded vehicle described below)*
☐ $10 Gift Tax ☐ $15 New Resident Tax-Previous State_____
☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because*_____

15 DESCRIPTION OF VEHICLE TRADED IN *(if any)*

| Make of Vehicle | Vehicle identification number | Year | Body style | Texas license no. |
|---|---|---|---|---|
| | | | | |

| 16 Tax Collector's receipt number (Form 31) | F673892 | Receipt date | 3-19-85 |
|---|---|---|---|
| Tax Collector | Kenneth Maun | County Collin | by MW |

17 SELLER, DONOR or TRADER'S AFFIDAVIT FOR ITEMS 1-15 ABOVE *(Previous owner)*

sign here ► HOWARD THORNTON FORD, INC. by *(signature)*

The statements above are true and correct

| Subscribed and sworn to before me this | 2 day of | MARCH | 19 85 |
|---|---|---|---|
| Notary Public *(signature)* | County COLLIN | State TEXAS | Commission expires 3-18-88 |

18 TITLE APPLICANT, PURCHASER, DONEE, OR TRADER'S AFFIDAVIT FOR ITEMS 1-15 ABOVE *(Owner)*

sign here ► *(signature)*

The statements above are true and correct

| Subscribed and sworn to before me this | 2 day of | MARCH | 19 85 |
|---|---|---|---|
| Notary Public *(signature)* | County COLLIN | State TEXAS | Commission expires 3-18-88 |

APPENDIX B

## TAX COLLECTOR'S RECEIPT FOR TEXAS TITLE APPLICATION/REGISTRATION/MOTOR VEHICLE TAX

F673892

RECEIPT NUMBER F673892

1. Date of receipt: 3-19-85
2. Vehicle sticker no.: 3904702K
3. Expire last day of: Feb
   Month / Year: 86
4. Trans. licensing: 722GU
   XX new plates issued

OWNER

Name, street address, city state, zip: Howard T. Hamilton
P.O.Box 12086
Dallas,Tx. 75225

7. Classification: Pass
8. Tonnage:
9. Empty weight: 2700
10. Carrying capacity:
11. Gross weight: 2700

12. Year: 1985
13. Make: BMW
14. Body style: Sed.
15. Prev. license no.: New
16. Surrendered title no.: MSO

17. Odometer: 20

18. Vehicle identification number: WBAAK7404F8767388

20. Dealer fee:
21. Penalty:
22. No. of mos.: 12
23. TOTAL. REG. OR TRANSFER FEE: 46.30

24. Tax Assessor-Collector: Kenneth Maun
25. TITLE APPL. FEE: 10.00

26. County: Collin
27. County no.: 43
28. Deputy: MV

Form 31 (Rev. 7-84)

30. 1ST LIENHOLDER

Name and mailing address: InterFirst Bank Dallas N.A.
P.O.Box 83756
Dallas,Tx.75283

Date of lien: 3-6-85

31. 2ND LIENHOLDER, name, city, state

Date of lien:

32. SELLER (Name of previous owner): Howard ThorntonFord Inc. Frisco,Tx.

33. $5 Even trade / Exempt
   $10 Gift / $15 New resident

34. Sales price: 18315.00
35. Trade-in:
36. Taxable value: 18315.00

37. Tax: 915.75
38. Tax paid to other state:
39. Penalty:
40. TAX & PENALTY PAID: 915.75

## TAX AND TITLE COPY 1

1238–1270

