In re James L. **BAKER** o/d/s K & L Associates, Inc., and Janice E. Baker, o/d/s K & L Associates, Inc., Debtors.

**Daniel A. Hepner, Chapter 7 Trustee, Plaintiff,**

v.

**AmeriCredit Financial Services, Inc., a Delaware Corporation, Defendant.**

**Bankruptcy No. 04–32920 HRT. Adversary No. 05–1111 HRT.**

United States Bankruptcy Court, D. Colorado.

Oct. 26, 2005.

---

Virginia M. Dalton, Pearlman & Dalton, P.C., Denver, CO, for Plaintiff.

Michael B. Levy, James E. Brown, James E. Brown & Associates, P.C., for Defendant.

## ORDER REGARDING TRUSTEE'S COMPLAINT TO RECOVER PREFERENTIAL TRANSFER

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court on the Plaintiff Chapter 7 Trustee's Complaint, dated February 2, 2005, seeking to avoid as a preferential transfer the Defendant's purported lien arising from the Debtor's purchase of a vehicle and preserving such avoided lien for the benefit of the estate. In the alternative, the Trustee seeks a money judgment equal to the value of the transfer, plus pre-judgment interest and his taxable costs. The Defendant's Answer, dated March 4, 2005, requests that the Trustee's Complaint and the relief sought therein be denied.

On or about July 15, 2005, Defendant AmeriCredit filed its *Motion for Summary Judgment, Pursuant to Fed. R. Bankr.P. 7056 (Fed.R.Civ.P. 56)* [the "Motion"], and the Trustee filed his *Plaintiff's Response to Defendant's Motion for Summary Judgment* [the "Response"] on or about August 8, 2005. As a result of a status hearing held on September 1, 2005, the parties advised the Court that they would proceed with a trial on the merits based on stipulated facts to be set out in their *Joint Pre-Trial Statement,* which the Court directed to be filed by September 19, 2005. On September 26, 2005, the Court heard the parties' oral arguments based on their Statement of Stipulated and Uncontested Facts [the "Stipulated Facts"], and the legal issues originally presented in the Defendant's Motion and the Plaintiff's Response thereto.

## I. FACTS

The Court adopts the parties' Stipulated Facts as set forth in their *Joint Pre-Trial Statement,* without listing them here in their entirety. However, the facts may be summarized as provided below.

James L. Baker, one of the Debtors in this case, purchased and took possession of a 2004 model Jeep automobile [the "Jeep"] from Lithia Foothills Chrysler, Inc. ["Lithia"], on August 2, 2004. Defendant AmeriCredit Financial Services, Inc., provided the financing for the purchase and Mr. Baker granted Defendant a security interest in the Jeep to secure that financing. An employee of Lithia presented the proper documentation to perfect Defendant's security interest in the Jeep to the Clerk of Larimer County, Colorado, on August 16, 2004, at 3:12 p.m. The Colorado Division of Motor Vehicles issued a title to the Jeep on September 28, 2004, which shows that the title was "accepted" on August 30, 2004, and that Defendant's lien was "filed" on August 30, 2004. Mr. and Mrs. Baker filed their joint bankruptcy petition in case number 04–32920 HRT on October 20, 2004.

## II. DISCUSSION

In this Adversary action, Plaintiff Daniel A. Hepner, the Chapter 7 Trustee [the "Trustee"], seeks to avoid the Defendant's security interest in Mr. Baker's Jeep as a preference under 11 U.S.C. § 547(b), which reads:

(b) Except as provided in subsection (c) of this section, the trustee may avoid

any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

*A. The Enabling Loan Defense Under 11 U.S.C. § 547(c)(3)*

■ Defendant seeks the protection of the "enabling loan" exception to the Trustee's preference avoidance powers. Title 11, U.S.C. § 547(c)(3) provides generally that a transfer of a security interest in property is not avoidable as a preference if that security interest secures new value used by the debtor to acquire the property, and the secured party perfects its security interest in the property within 20 days after the debtor takes possession of it.[1]

The resolution of this dispute requires the Court to construe Colo.Rev.Stat. § 42–6–101 et seq. [the "Colorado Certificate of Title Act"] to determine the point in time when a security interest in an automobile becomes perfected under Colorado state law. As noted above, Mr. Baker took possession of the Jeep on August 2, 2004, and Defendant presented its lien application to the county clerk on August 16, 2004, just 14 days after Mr. Baker got possession of the car. If perfection of Defendant's lien occurred upon the presentation of the paperwork to the county clerk, then Defendant's lien was perfected within 20 days as required by § 547(c)(3). However, on the face of the certificate of title issued by the Colorado Division of Motor Vehicles, the title lists August 30, 2004, as the "date accepted" and, with respect to Defendant's lien, August 30, 2004, is listed as the "date filed." If perfection did not occur until Defendant's lien was "filed," then perfection occurred 28 days after Mr. Baker took possession of the Jeep. In that event, perfection occurred outside of the 20 day safe harbor provided by § 547(c)(3) and that subsection provides no defense to the Trustee's preference action.

---

1. (c) The trustee may not avoid under this section a transfer . . .

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 days after the debtor receives possession of such property;

11 U.S.C. § 547(c)(3).

Colorado's Certificate of Title Act was amended by S.B. 05–038, 2005 Colo. Legis. Serv. chap. 223 (West), which took effect on August 8, 2005. The Court will refer to the version of the statute that was in effect during 2004 when these events occurred.

Section 42–6–120 of the Certificate of Title Act provides in relevant part:

> Any mortgage or refinancing of a mortgage intended by the parties to the mortgage or refinancing to encumber or create a lien on a motor vehicle, to be effective as a valid lien against the rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owner, shall be filed for public record and the fact of filing noted on the owner's certificate of title or bill of sale substantially in the manner provided in section 42–6–121; and the filing of such mortgage with the director's authorized agent[2] and the notation by the agent of that fact in the filing of the certificate of title or bill of sale substantially in the manner provided in section 42–6–121 shall constitute notice to the world of each and every right of the person secured by such mortgage.

COLO.REV.STAT. § 42–6–120 (2004).

Section 42–2–121 of the Colorado Certificate of Title Act provides in relevant part:

> The holder of any chattel mortgage on a motor vehicle desiring to secure the rights provided for in this part 1 and to have the existence of the mortgage and the fact of the filing of the mortgage for public record noted in the filing of the certificate of title to the encumbered motor vehicle shall present the signed original or signed duplicate original of said mortgage or copy thereof certified by the holder of the mortgage or the holder's agent to be a true copy of the signed original mortgage and the certificate of title or application for certificate of title to the motor vehicle encumbered to the authorized agent of the director in the county or city and county in which the mortgagor of such motor vehicle resides or where the property is located. The filings may be either with paper documents or electronically.... Upon the receipt of said electronic or original or duplicate mortgage or certified copy thereof and certificate of title or application for certificate of title, the authorized agent, if satisfied that the vehicle described in the mortgage is the same as that described in the certificate of title or filed title, shall file within the director's authorized agent's motor vehicle database notice of such mortgage or lien in which shall appear the day and hour on which said mortgage was received for filing, the name and address of the mortgagee named and the name and address of the holder of such mortgage, if such person is other than the mortgagee named, the amount secured by the vehicle, the date of the mortgage, the day and year on which said mortgage was filed for public record, and such other information regarding the filing of the mortgage in the office of the director's authorized agent as may be required by the director by rule.

COLO.REV.STAT. § 42–6–121 (2004).

Finally, § 42–6–147 describes the registry to be maintained by the state for the filing of motor vehicle and lien information [the "Central Registry"]:

---

2. "Authorized agents" means the county clerk and recorder in each of the counties of the state, including the city and county of Broomfield, except in the city and county of Denver, and therein the manager of revenue or such other official of the city and county of Denver as may be appointed by the mayor to perform functions related to the registration of motor vehicles is the authorized agent.

COLO.REV.STAT. § 42–6–102(1) (2004).

The director shall maintain a central registry of electronic files for all certificates of title, mortgages, liens, releases of liens or mortgages, and extensions. The authorized agents shall transmit all electronic filing information to the director for maintenance of the registry. COLO.REV.STAT. § 42–6–147 (2004).

 The particular sentence that describes the point in time when a security interest in a motor vehicle becomes perfected under Colorado law (substantially stripped of excess verbiage) states that "[a]ny mortgage ... intended by the parties ... to ... create a lien on a motor vehicle, *to be effective as a valid lien ...*, shall be filed for public record...." COLO. REV.STAT. § 42–6–120 (2004) (emphasis added). The Court reads that sentence to say that the lien is effective at the time it is filed for public record. The context and structure of COLO.REV.STAT. §§ 42–6–120 & 42–6–121 lead the Court to conclude that a creditor's lien has not been filed for public record until the information submitted from the lienholder has been reviewed by the director or his authorized agent and the lien information has been entered into the agent's database and transmitted to the state's Central Registry.

As in all cases involving statutory construction, "our starting point must be the language employed by Congress," and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." Thus "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (citing *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979); *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962); *Con-*

*sumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980)).

The common understanding of the term "file" is found in Black's Law Dictionary and is defined as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record...." Black's Law Dictionary 642 (7th ed.1999). Defendant contends that its lien was perfected on August 16, 2004, when the Lithia employee delivered all of the appropriate documentation to the Larimer County Clerk. Defendant's position reflects a perfectly natural reading of COLO.REV.STAT. § 42–6–120 (2004), which provides that a motor vehicle lien becomes effective when it is filed for public record.

But, by contrast to the definition appearing in Black's Law Dictionary, the Colorado legislature has seen fit to include a definition for the word "file" in the statute dealing with liens against motor vehicles where it states that " '[f]ile' means the creation of or addition to an electronic record maintained for a certificate of title by the director or an authorized agent of the director, as defined in section 42–6–105." COLO.REV.STAT. § 42–6–102(4.4) (2004).

 By defining the term "file" within a special definitions section of the statute, Colorado's legislature has clearly shown that the ordinary meaning of the term "file" does not apply in the context of Colorado's Certificate of Title Act. *See Perrin v. U.S.,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, *unless otherwise defined,* words will be interpreted as taking their ordinary, contemporary, common meaning.") (emphasis added). The definition that the Colorado legislature has chosen to use is narrow and technical. "Filing," as that term is used in the Certificate of Title Act,

involves something different than mere "delivery" of documents to a records custodian. The definition of the term "file" as it is used in this statute is not worded broadly enough to include the more common understanding of the word as reflected in Blacks Law Dictionary.

The statute requires the agent to perform a review of the material received from the lienholder, COLO.REV.STAT. § 42–6–117 (2004), and ascertain "that the vehicle described in the mortgage is the same as that described in the certificate of title or filed title." COLO.REV.STAT. § 42–6–121 (2004). It is only after that review is performed that the agent is instructed to "file within the director's authorized agent's motor vehicle database notice of such mortgage or lien ..." *Id.* Filing of the lien, therefore, is clearly intended to take place after the director's agent has performed the statutorily required review. Thus, the use of the term "file" in this statutory scheme is consistent with the notion that the lien does not get filed for public record, and is not perfected, until it has been reviewed by the director or his agent and that information has been entered into the Central Registry.

That a lien may not be perfected until after certain internal processes or procedures have been performed by the director or his agent is consistent with the operation of motor vehicle lien statutes in at least some other jurisdictions. In *Union Bank & Trust Co. v. Baker (In re Tressler)*, 771 F.2d 791 (3rd Cir.1985), the Third Circuit concluded that, under Pennsylvania's motor vehicle lien statute, "a security interest in a car is perfected on the date the Department of Transportation issues a certificate of title bearing the name of the lienholder." *Id.* at 793. In the case of *Pongetti v. GMAC (In re Locklin)*, 101 F.3d 435 (5th Cir.1996), the circuit court overturned a district court determination that delivery of documents to a county commissioner constituted perfection under an Alabama statute. The statute set up a procedure somewhat similar to Colorado's in that it required the county commissioner to deliver the documents to the state motor vehicle department. Under the structure of the Alabama statute, the court determined that perfection did not occur until the documents were delivered to the state by the county commissioner. *Id.* at 442–43. In the case of *Fidelity Fin. Serv., Inc. v. Fink*, 522 U.S. 211, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998), the Supreme Court was careful to note that "[i]n speaking ... of acts necessary to perfect a security interest under state law, we mean whatever acts must be done to effect perfection under the terms of the applicable state statute, whether those be acts of a creditor or acts of a governmental employee delivering or responding to a creditor's application." *Id.* at 214, 118 S.Ct at 653 n. 1. For better or worse, perfection is simply not a matter that is under the full control of the lienholder where, under the state statutory scheme, perfection does not occur until after the completion of some internal review or other process by the state or its agent.

COLO.REV.STAT. § 42–117 (2004) is captioned "**Filing of certificate.**" That section describes the process that the director or the director's authorized agent must go through before filing a certificate of title.[3]

**3.** (1) The director or the director's authorized agent shall use reasonable diligence in ascertaining whether the facts stated in any application and the facts contained in other documents submitted to the director or the director's authorized agent with said application are true and, in appropriate cases, may require the applicant to furnish other and additional information regarding ownership of the vehicle and the right to have filed on behalf of the applicant a certificate of title for the vehicle. The director or the di-

That section makes it clear that the director or his agent may only file a certificate of title after undertaking a review of the application or other documents submitted. It provides that the director or his agent may demand further information or documents from the applicant or may refuse to file the certificate of title upon a determination that the applicant is not entitled to have a certificate filed. Thus, filing of a certificate of title under the Colorado statutory scheme is not a mere ministerial act that may occur immediately after documents are delivered to a county clerk's office. Filing may only take place after completion of a statutorily mandated review.

Exhibit 3 to *Plaintiff's Response to Defendant's Motion for Summary Judgment* is the *Affidavit of Pamela Nielsen*. Ms. Nielson identified herself as the "vehicle licensing manager for Larimer County." In her affidavit, she describes the process that Larimer County employs in reviewing and filing motor vehicle liens. That office receives the paperwork from the person wishing to perfect a lien; undertakes a review of the paperwork which has been submitted to it; and, if all is in order, her office electronically "files" the lien with the state's Central Registry. According to Ms. Nielsen, the "date accepted" and "date filed" which are printed on the Certificate of Title reflect the date that Larimer County electronically files the lien information with the Central Registry.

Both Colo.Rev.Stat. § 42–6–117 (2004) and Ms. Nielsen's affidavit support the Court's reading of Colorado's Certificate of Title Act and both refute the notion that merely delivering the lien paperwork to the office of a county clerk constitutes filing of the lien as that term is used in the Colorado statute. Under § 42–6–117, a substantive review must be conducted after documents are delivered to the director's agent and before the actual filing of the certificate of title. Ms. Nielsen's affidavit makes it clear that it is only after her office has undertaken a review of the lien paperwork that the lien is filed and the notation of the date filed on the Certificate of Title reflects the date that her office takes action to file the lien with the Central Registry. Both § 42–6–117 and the Nielsen affidavit lend support to the Court's view that, under Colorado law, the act of delivering title and lien documents to a county clerk's office and the actual filing of the certificate of title that perfects a lienholder's interest are two entirely separate and distinct activities. Under the structure of the Certificate of Title Act, it appears that it is inevitable that some delay will occur between the time documents are delivered to the agent's office and the time a lien becomes perfected by filing for public record.

The Court's conclusion is further bolstered by the absence of any relation back provision in the Colorado statute. If Colorado's legislature had intended that, upon review and recording of the lien, it should relate back and be effective on the date

rector's authorized agent may refuse to file a certificate of title to such vehicle if from an investigation the director or the director's authorized agent determines that the applicant is not entitled thereto.

(2) No certificate of title may be filed for a vehicle required to have its vehicle identification number inspected pursuant to section 42–5–202 unless a vehicle identification number inspection form has been

transmitted to the director or the director's authorized agent showing the number recorded from the vehicle or the number assigned to the vehicle pursuant to section 42–5–205.

(3) At the request of the title owner, lienholder, or mortgagee, a paper copy of a filed certificate of title may be issued by the director or the director's authorized agent. Colo.Rev.Stat. § 42–6–117 (2004).

the lienholder delivered its documentation to the county clerk or the date the lien was created, it could have easily said so. Many other state motor vehicle statutes do explicitly provide that the date a lien is perfected relates back to the date the lien is created or the date a title application is delivered to a county filing office. *See, e.g.,* Ga.Code Ann., § 40–3–50(b)(2) ("The security interest is perfected as of the time of its creation if the initial delivery of the application or notice to the commissioner or local tag agent is completed within 20 days...."); Ala.Code § 32–8–61(b) (1975) (The security interest "is perfected as of the time of its creation if the delivery is completed within 30 days thereafter, otherwise, as of the time of the delivery."); Conn. Gen.Stat. § 14–185(a) (The security interest "is perfected as of the time when it attached if such delivery is completed within twenty days thereafter ...; otherwise it is perfected as of the time of such delivery."); Fla. Stat. § 319.27(3)(b) ("... a security interest under this chapter shall be perfected upon the filing of the notice of lien with the department, the county tax collector, or their agents. Provided, however, the date of perfection of a security interest of such secured party shall be the same date as the execution of the security agreement or other similar instrument if the notice of lien is filed in accordance with this subsection within 15 days after the debtor receives possession...."); La.Rev. Stat. Ann. § 32:710 A. ("A security interest ... shall be perfected as of the time the financing statement is received by the Department of Public Safety and Corrections, so long as such receipt subsequently is validated by the secretary of the Department of Public Safety and Corrections."); N.H.Rev.Stat. Ann. § 261:24 II. ("A securi-

ty interest ... is perfected as of the time of its creation if delivery is completed within 20 days thereafter, otherwise as of the time of the delivery."). The above list of state motor vehicle title statutes that contain relation back provisions is not all-inclusive, but they demonstrate that some state legislative bodies have made the policy choice to insure that lienholders who act promptly to perfect their interests will not fall victim to internal processing delays that are beyond the creditor's control. Conspicuously absent from the Colorado statute is any provision stating that perfection relates back to either when the lien was created or when the lien paperwork is delivered to a county clerk.[4] That the Colorado statute contains no such provision is simply evidence that Colorado's legislature has made a policy choice that is contrary to the choice made in those jurisdictions cited above.

Finally, as noted above, the current version of Colorado's Certificate of Title Act differs from the version that was in effect in 2004, when the underlying events here took place. The text of the bill that amends the Act states that it is "concerning the clarification of statutes addressing the titling of motor vehicles." S.B. 05–038, 2005 Colo. Legis. Serv. chap. 223 (West). Normally, an amended statute would not be relevant to the Court's inquiry into the proper construction of an earlier version. However, because the amending legislation purports to clarify the existing Act, the Court takes some guidance from the amendment as to how the Court should construe the statute as it appeared in 2004.

The final two sentences of Colo.Rev. Stat. § 42–6–120(1) now read:

**4.** Justice Frankfurter has cautioned that the courts should "listen attentively to what a statute says," and that *"[o]ne must also listen attentively to what it does not say."* Felix Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum. L.Rev. 527, 536 (1947) (emphasis added).

The filing of a mortgage with an authorized agent substantially in the manner provided in section 42–6–121 shall constitute notice to the world of each and every right of the person secured by such mortgage. *Such notice shall be effective on the date accepted as noted on the certificate of title.*

COLO.REV.STAT. § 42–6–120(1) (2005) (emphasis added).

In the present case, the "date accepted"[5] as noted on the Certificate of Title is "8/30/2004." That is the same date that appears as the "date filed" with respect to Defendant's lien. Thus, the clarifying amendment to COLO.REV.STAT. § 42–6–121 is consistent with the Court's construction of the 2004 version of the statute that perfection of the lienholder's security interest occurs upon filing of the lien for public record in the Central Registry and not upon delivery of the lien application to the director or his agent by the lienholder.

The Defendant argues that the Court's interpretation of how the Colorado Certificate of Title Act operates leads to anomalous results with respect to lien priorities. It argues that a judgment lien may take priority over the automobile lender's lien if it is recorded during the time period between when a lienholder's paperwork is delivered to a county clerk's office and the time that the lien is perfected when it is filed for public record by the clerk's office.

Where a security interest in a motor vehicle, subject to recordation under Colorado's Certificate of Title Act, conflicts with other types of liens which may attach to the same property, the priority rules are a bit convoluted. Three bodies of law

govern the interaction between a purchase money security interest in a motor vehicle and a judgment creditor's execution lien which may attach to the same vehicle: 1) the Uniform Commercial Code; 2) Colorado's Certificate of Title Act; and 3) state law with respect to execution and levy on personal property. *See, generally, Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437 (Tenn.Ct.App.1994).[6]

As this is merely a hypothetical suggested by counsel, the Court will not address it in detail. However, it appears that, under Colorado law, no lien arises with respect to a judgment debtor's personal property upon the rendition or filing of a judgment as it does against real estate. The lien only arises upon delivery of an execution to the sheriff for levy. The Court takes the Defendant's point that a judgment creditor could conceivably cause an execution to be delivered to the sheriff for levy upon an automobile that is the subject to a purchase money creditor's application to have its lien recorded on the automobile title. Indeed the delivery of such execution could occur between the time that the purchase money creditor delivers its lien paperwork to the county clerk and the time that its lien becomes perfected by filing in the Central Registry.

The result in that scenario would be that the judgment creditor obtains priority over the purchase money creditor. The Court suspects that is a rare occurrence. But, more to the point, as the Court noted above, a number of state statutes directly address that issue by including relation back provisions that protect

---

**5.** "Accepted" is not a defined term, nor is it used elsewhere in the statute in a manner that clarifies its meaning. However, what is important to the Court in this context is the fact that the "date accepted" and "date filed" in this case are identical.

**6.** This Tennessee case addresses a conflict between a consensual automobile lien and a different creditor's execution lien. It provides a good general discussion of the interaction of the various bodies of law that control the issue suggested by Defendant's counsel.

those lenders who act promptly. That the Colorado legislature could have done the same, but chose not to, is simply an example of the policy choices that legislatures make whenever they enact legislation. It is not the province of this Court to rewrite the legislature's work product in a manner that one or another constituency may think represents wiser policy choices.

Furthermore, that priority conflict issue, which Defendant suggests highlights a grave defect with the Court's construction of the statute, is not the kind of absurd result that would lead the Court to seriously question its interpretation. One effect of making a consensual lien effective only upon actual inspection and acceptance of the lien documentation is to make sure that the information contained in the state's Central Registry accurately reflects whether or not an individual vehicle has a lien against it. Otherwise, if Colorado allowed relation back, the Central Registry would frequently indicate that a vehicle has a clear title even though a lien which is awaiting processing would relate back to an earlier date once it has been entered into the registry.

The Defendant also argues that the Court's interpretation of Colorado's Certificate of Title Act fails to acknowledge the fundamental purpose of the act. The Defendant refers to § 42–6–130, the priority provision within the Certificate of Title Act, as reflecting that purpose.

Section 42–6–130 states that "[t]he liens of mortgages filed for record or noted on a certificate of title to a motor vehicle, as provided in section 42–6–121, shall take priority in the same order that the mortgages creating such liens were filed in the office of the director's authorized agent." COLO.REV.STAT. § 42–6–130 (2004). The Defendant argues that this priority provision is "a critical section in determining the intent of the Legislature, because the Legislature must have presumed that any lender considering making a loan to be secured by the owner's vehicle would be able to determine the existence of encumbrances on vehicles, once any other lender had submitted its title and lien application to a county clerk."

First of all, if the act of delivering paperwork to a county clerk is the event of perfection, until a new certificate of title has been issued, a subsequent lender would need to check each and every county in the state to determine if another lien exists. Under this Court's interpretation, the statute assigns priority in the order that the liens are entered into the Central Registry. Contrary to the Defendant's argument, by making Central Registry the one and only source for accurate title information, the act reduces the chances that a subsequent lender will be misled. But, this Court need not examine the issue of the legislature's intent where the meaning of a statute is clear on its face and where the meaning derived from a reading of the statute's plain language is not clearly at odds with the purposes of the enactment. *Caminetti v. U.S.*, 242 U.S. 470, 490, 37 S.Ct. 192, 196, 61 L.Ed. 442 (1917) ("[T]he language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent."). While the result the Court reaches may be disquieting to lenders in the Defendant's position, it is compelled by the language of the statute. The Court rejects the Defendant's argument that such an interpretation is contrary to the statute's purpose.

In the case of *Russell v. Quality Auto City, Inc. (In re Hermann)*, 271 B.R. 892 (Bankr.D.Wyo.2001), the Defendant lender complained that "it should not be held to the twenty-day perfection period in § 547(c)(3) because the delay in this case was caused by the debtors and by prac-

tices of the Albany County Clerk implementing Wyoming statutes." *Id.* at 895. In response, the court noted that the lender "was in control of the circumstances under which the funds were loaned to the debtor and the debtor gained possession of the vehicle." *Id.* The same is true of auto lenders operating in the state of Colorado. Just as the state legislature makes various policy choices, so do the businesses operating in this state under the state's chosen statutory scheme. Inevitably, for better or worse, consequences flow from those choices.

### B. Plaintiff's Prayer for Judgment

On page 4 of the Motion, Defendant states that "The parties agree that under the facts of this case, the Debtors' granting of a security interest in the Vehicle to AmeriCredit would constitute a preferential transfer, voidable at the election of the Trustee under 11 U.S.C. § 547(b), unless AmeriCredit can establish an exception thereto under 11 U.S.C. § 547(c)(3)." This position was reaffirmed by the parties in the Stipulated Facts, No. 17. Consequently, because the parties are in agreement that the dispositive issue under these facts is the applicability of the enabling loan exception to the Trustee's avoiding powers under § 547(b), and because the Court finds that the Plaintiff prevails on that issue, the Court will enter judgment in Plaintiff's favor.

### III. CONCLUSION

Americredit bases its defense upon the protection afforded under § 547(c)(3) to a purchase-money creditor whose lien securing repayment of an "enabling loan" is perfected within 20 days after a debtor takes possession of the collateral for the loan. For the reasons stated above, the Court has concluded that, under the statutory scheme of Colorado's Certificate of Title Act, a lien on a motor vehicle becomes perfected at the time it is filed for public record by the entry of that lien into the state's Central Registry. That event occurred some 28 days after Mr. Baker took possession of the Jeep. But, to take advantage of the protection given under § 547(c)(3), Defendant's lien would have had to have been perfected within 20 days. Because perfection of Defendant's lien in this case fell outside of that 20 day timeframe, the Court must grant judgment in favor of Plaintiff.

The Court does perceive that the interaction of § 547(c)(3) with Colorado's Certificate of Title Act places creditors in an uncertain position. The acts required to constitute perfection, and the effective date of motor vehicle lien perfection are matters of state law. *Fluharty v. Citizens Nat. Bank (In re Horner)*, 248 B.R. 516, 518 (Bankr.N.D.W.Va.2000); *In re Jarvis*, 242 B.R. 172, 174–75 (Bankr.S.D.Ill.1999). The time-frame within which perfection must occur is a matter of federal law under § 547(c)(3)(B). *See Fidelity Fin. Serv., Inc. v. Fink*, 522 U.S. 211, 213 & n. 1, 118 S.Ct. 651, 652–53 & n. 1, 139 L.Ed.2d 571 (1998). Under the state statutory scheme, mandatory internal processes intervene between the time a lienholder delivers its lien documents plus any applicable fee to the appropriate office and the actual date of perfection. Under such a system, the lienholder can never be sure if it is acting promptly enough to avert the risk that its lien will be avoided by a bankruptcy trustee. In this case, the Defendant could have acted within 7 days of the date that Mr. Baker took possession of the collateral and it still could not have relied on the enabling loan exception under § 547(c)(3) to protect its security interest from avoidance by a bankruptcy trustee. But, the Court may only interpret existing law. Where state law interacts with feder-

al law, absent an overriding federal interest, a federal court must defer to the policy choices made by the state as reflected in state law. *See, generally, Butner v. U.S.*, 440 U.S. 48, 51–54, 99 S.Ct. 914, 916–18, 59 L.Ed.2d 136 (1979) (state law determines property rights in assets of bankrupt's estate).

The Colorado legislature amended its Certificate of Title Act just this year. The Court must presume that the drafters of that amendment were well aware of Bankruptcy Code § 547 as well as other state statutory schemes that allow a motor vehicle lien to relate back to the time the lien was created or the time lien documents are delivered to the appropriate filing office. That the legislature acted to clarify a process that delays perfection until after a review of the documents presented to establish a creditor's lien represents an intentional and informed policy choice that the legislature is entitled to make and that this Court is bound to respect. Therefore, it is

**ORDERED** that the Court will enter JUDGMENT in favor of Plaintiff and against Defendant avoiding the transfer of a lien to Defendant in and against a 2004 Jeep automobile, VIN# 1J4GL48K44W261776, owned by James L. Baker, pursuant to 11 U.S.C. §§ 547(b) and 550(a)(1). The avoided lien is hereby preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551.